MORAN v. CARLSON.

(Supreme Court, Appellate Division, Second Department. June 3, 1904.)

1. MASTER AND SERVANT—INJURIES TO SERVANTS—FELLOW SERVANTS.
    Where defendant furnished a steam hoist, with an engineer to operate the same, to decedent's employer, while the latter was engaged in the erection of a building, and deceased was killed by the negligence of the engineer in prematurely lowering the hoist without notice, deceased and such engineer were not fellow servants.

2. SAME—NEGLIGENCE—EVIDENCE.
    Where deceased was killed by the premature lowering of a steam hoist in a building on which he was employed, held, that the evidence sufficiently showed negligence on the part of the engineer.

Appeal from Trial Term, Kings County.

Action by Michael J. Moran, as administrator of the estate of Patrick Moran, deceased, against Conrad Carlson. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, he appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

¶ 1. See Master and Servant, vol. 34, Cent. Dig. § 482.

L. Sidney Carrere, for appellant.
James C. Cropsey, for respondent.

WILLARD BARTLETT, J.  Plaintiff's intestate, Patrick Moran, was a laborer in the employ of Kyran A. Murphy, a contractor, who was engaged in the erection of a school building in the borough of Brooklyn.  The defendant was in the hod elevator business, and furnished to the contractor a hod elevator for use in the erection of the building, together with necessary rigging, and an engine and engineer to operate the elevator.  Just before the accident which caused Moran's death, the elevator had been raised from the cellar to the first floor, where it stopped.  While Moran was in the act of placing a hod of bricks upon the elevator, it started down, and Moran went over the cross-bar, sustaining injuries which caused his death.  The contention upon the part of the plaintiff on the trial was that the engineer, whose engine was outside the building about 38 or 40 feet from the elevator, was negligent in starting the elevator downward either without having received any signal to do so, or without having received a proper signal.  No exceptions were taken to the charge, and the appeal is based upon the propositions that the motions to dismiss at the end of the plaintiff's case and at the end of the whole case should have been granted, and, furthermore, that the verdict was contrary to the evidence and weight of evidence.

The learned trial judge was undoubtedly right in holding that the deceased and the engineer in charge of the hod elevator were not fellow servants.  Mills v. Thomas Elevator Co., 54 App. Div. 124, 66 N. Y. Supp. 398, affirmed 172 N. Y. 660, 65 N. E. 1119.  He charged the jury that the defendant was liable for the want of reasonable care upon the part of the engineer, and the correctness of this proposition is not disputed, the contention of the appellant being simply that the evidence did not suffice to establish the absence of such care.  There was abundant testimony, however, showing that the customary method of advising the engineer when to raise and lower the elevator was the ringing of a bell attached to the apparatus, and the engineer did not ordinarily heed oral directions to raise or lower it when the bell was in working order.  The bell appears to have been in working order at the time of the accident, because the engineer himself testified, "When the elevator left the cellar to go up to the first floor just before this accident, the bell had rung."  The bell did not ring, however, as a signal to lower it, but the engineer attempts to justify his action in letting it down at the time when the plaintiff was hurt by saying that some one in the cellar called out to him, "Engineer, lower the machine down!"  He admits that he did not see the person who gave this order, and did not know who he was.  It seems to me that the engineer's own account of the occurrence is such as to warrant the imputation of negligence against him.  If the call had come from the floor above, where the elevator had been stopped, it might reasonably be argued that it was consistent with care and prudence on his part to obey it, inasmuch as a person upon that floor would know the condition of things about the elevator, and whether it might prudently be moved or not; but coming, as he says the call

did, from an unknown person in the cellar, who might not clearly be able to perceive the condition of things on the floor above, it may well be deemed to have been imprudent to lower the elevator in the absence of any signal by means of the bell, without taking some precaution to ascertain the source of the order, and that it had been given with due regard to the safety of those employed in the building. There is also evidence in the case tending to show that the call which the engineer claims to have obeyed consisted merely of the words, "Let it down," and did not expressly refer to the elevator at all, but came from an upper floor, and related to work in no wise connected with the elevator. If such was the fact, I think the jury were also at liberty to infer negligence on the part of the engineer in complying with a direction coming from a distant part of the building, where he ought to have known that the elevator could not have been at that time. On the whole case, I think the evidence was sufficient to sustain the verdict, and that the judgment should be affirmed.

Judgment and order affirmed, with costs. All concur.