(97 App. Div. 69.)

### BRESLIN v. SPARKS et al.

(Supreme Court, Appellate Division, Second Department. July 28, 1904.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—FELLOW SERVANTS.

Plaintiff, a longshoreman, while in the employ of a firm engaged in loading a vessel, was injured through the alleged negligence of the driver of a horse on the dock, by which merchandise was raised from a lighter to the vessel by means of block and tackle. The horse belonged to defendants, who had a general arrangement with the firm to supply horses when needed, and the driver of the horse was in defendants' general employ. Prior to the time of the accident, he had been sent by defendants with the horse to the premises of the firm, to be used in the work there in progress. *Held* that, while the driver was so engaged, he was in the special employment of the firm by which plaintiff was employed, and was therefore plaintiff's fellow servant.

Appeal from Trial Term, Kings County.

Action by Daniel Breslin against William J. Sparks and another. From a judgment in favor of defendants, plaintiff appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOOD-
WARD, JENKS, and HOOKER, JJ.

Melville J. France, for appellant.

Thomas E. Pearsall, for respondents.

WOODWARD, J.   The plaintiff was a longshoreman in the em-
ploy of Emery & Price, and on the day of the accident was engaged,
with others, in transferring reels of barbed wire from a lighter to the
bark Meta, lying at Pier 12, East river.   It appears that the lighter
was much lower than the vessel which was being loaded, so that it was
out of sight of those upon the dock.   An apparatus had been rigged
up to the masts on the vessel for suspending block and tackle, and a
rope extended through the pulleys in such a way that one end of the
same dropped down upon the lighter, while the other crossed over
the bark, through the pulleys, and was attached to a horse upon the
dock.   The end of the rope which fell upon the lighter was equipped
with a hook, and the plaintiff at the time of his injuries was engaged
in placing several bunches of barbed wire upon hooks attached to the
ends of short ropes, which in turn were fastened to the hoisting rope
by a single hook.   Emery & Price's foreman in charge of the loading
stood upon the deck of the vessel, and, when the plaintiff notified the
foreman that he had the load ready, the latter blew a signal upon a
whistle, and the man in charge of the horse drove the animal away
from the ship, raising the load and drawing it to the deck of the ves-
sel, where it was unhooked, and the operation was again gone through
with.   At the time of the accident the plaintiff had hooked on the load,
had given the signal, and the horse had been put in motion; and,
after the line became tight, the plaintiff discovered that one of his
fingers had been caught in the hooks.   He called to the foreman, and
the latter gave a signal on his whistle to stop; but for some rea-
son the horse was not stopped until the load, with the plaintiff, who
had grabbed the main rope with his free hand, was landed upon the
deck.   The negligence alleged is the failure of the driver of the horse
to stop in answer to the signal, although it does not appear from the
evidence that the injury, resulting in the loss of a portion of the plain-
tiff's finger, had not been done before the signal was sounded, or be-
fore it was possible for the horse to have been stopped.   Of course,
if the driver of the horse was a fellow servant of the plaintiff, there
was no cause of action, and the dismissal of the complaint was proper;
and this is the principal question presented upon this appeal.

It appears that the defendants kept horses for the purpose of doing
this kind of work about the docks; that Emery & Price had a general
arrangement with them to supply horses when needed; and that the
defendants, when called upon for a horse, sent it to the premises of
Emery & Price, accompanied by a driver, and this was the case on the
day of the accident.   The driver of the horse was in the general em-
ploy of the defendants, and, assuming that he was negligent in failing
to stop the horse upon a proper signal, were the defendants liable?
Was he the defendants' servant at the time of the accident, to such an
extent that they are liable for his negligence in the performance of
a detail of the work in which he was engaged at the time with the plain-

tiff and other of the latter's fellow servants? We are of the opinion that he was not the servant of the defendants at the time of the accident, but that he was a fellow servant of the plaintiff. We reach this conclusion because of the principle that, where a person accepts employment in a business in which others are engaged with him, there is an implied agreement upon his part to assume all the ordinary risks attendant upon such business, including accidents which result from the carelessness of co-employés; and the foundation upon which it rests is unity of service and control. Cunningham v. Syracuse Improvement Co., 20 App. Div. 171, 174, 46 N. Y. Supp. 954. Clearly, if the defendants had sent a horse to Emery & Price, and the latter had taken a man about the dock to drive the same, the plaintiff would have accepted the risk of injury through the carelessness of such a co-employé; and we discover no difference in the matter because the driver happened to be in the general employ of the defendants. He was there upon the dock performing a part of the general work of transferring a load from the lighter to the vessel. He was subject to discharge, not from his general employment, but from his special employment, by the foreman of Emery & Price; and his conduct in driving the horse, in starting and stopping him, in backing him up or moving him forward, or in starting the work or discontinuing the same, was as much within the control of Emery & Price, or their foreman, as was the plaintiff. The process of carrying on the work was simple. The plaintiff had had a long experience in the same line, and he knew that if his fingers got caught under the hooks he was liable to be injured, and that the horse and the driver were out of sight; and this risk was exactly the same whether the driver was employed by Emery & Price directly or indirectly through the defendants. Under the doctrine of assumption of obvious risks, and independently of the implied agreement, it might be fairly said that the plaintiff in the present action had waived any question as to the relations of the driver to the employer or himself by undertaking the work and continuing it knowing all of the facts. Drake v. Auburn City Ry. Co., 173 N. Y. 466, 473, 66 N. E. 121. In this case there was unity of service and control, and the natural deduction would appear to be that if a person is injured by the carelessness of another, and at the time of the accident they are both subject to the orders and control of a common master, they are co-servants as to the particular employment in which they are engaged, although one of them may at the same time happen to be in the general service of a third party; or, to state the matter more concisely, a person who is temporarily employed while in the general service of another must be treated as to that particular employment as the servant of the person thus employing him, and the person who has the right to direct and control his conduct in that particular business must likewise be regarded as his master, for it is quite clear that the existence of a general relation of master and servant does not exclude a like relation between the servant and a third party, to the extent of the special service in which the servant may be actually engaged. Cunningham v. Syracuse Improvement Co., 20 App. Div. 175, 46 N. Y. Supp. 954, and authorities there cited; Baldwin v. Abraham, 57 App. Div. 67, 67 N. Y. Supp. 1079, where the authorities are carefully con-

630    89 NEW YORK SUPPLEMENT   (Sup. Ct.

and 123 New York State Reporter

sidered and distinguished. See, also, Howard v. Ludwig, 57 App. Div. 94, 96, 67 N. Y. Supp. 1095.

The conclusion which we have reached is not in conflict with that held in Mills v. Thomas Elevator Co., 54 App. Div. 124, 66 N. Y. Supp. 398. In that case the plaintiff was in the employ of the Manhattan Concrete Company, which had a contract for laying concrete floors for a sugar refinery. The concrete company made a contract with the Thomas Elevator Company to put in a hod elevator, and to furnish a man to operate the same. The plaintiff was sent to remove an obstruction from the elevator shaft, and while thus engaged was injured by the action of the engineer of the elevator company in starting the elevator without a proper signal. In that case the men were not engaged in the same employment. The elevator company furnished its machine, and a man to operate the same. It had no connection with the work for which the plaintiff was employed, and the plaintiff had not, therefore, assumed the risks of the engineer's negligence in running the elevator.

The judgment appealed from should be affirmed, with costs. All concur.