HENRY v. STANLEY HOD ELEVATOR CO.

(Supreme Court, Appellate Division, Second Department.   December 30, 1908.)

1. APPEAL AND ERROR (§ 1002*)—REVIEW—FINDINGS OF FACT.
    A verdict on conflicting evidence will not be disturbed on appeal.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

2. MASTER AND SERVANT (§ 301*)—INJURIES TO THIRD PERSONS—NEGLIGENCE OF SERVANT—EXISTENCE OF RELATION.
    A hod elevator company, contracting with a construction company for the furnishing of an elevator to be used in the construction of a building and an engineer to operate it, is liable for injuries to a servant of the construction company by the negligence of the engineer in moving the elevator without warning, and without receiving any signal from the employés of the construction company, though the foreman of the construction company was authorized, "if the engineer was not satisfactory, to remove him and get another one," since such authority was not a relinquishment·by the elevator company of the control of the engineer, but at most merely authority to the construction company to dispense with the services of the engineer furnished them if he was not satisfactory, and to require the elevator company to send another engineer to take his place.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1213; Dec. Dig. § 301.*]

3. MASTER AND SERVANT (§ 301*)—FELLOW SERVANTS—WHO ARE.
    The fact that an engineer employed by an elevator company, which furnished an elevator to a construction company to aid in the construction of a building, reported for work to the foreman of the construction company and received instructions from the employés of the construction company as to when to raise and lower the elevator, did not change the character of his employment from that of a servant of the elevator company to that of a servant of the construction company; and a fellow servant of one of the construction company's employés, who was injured by the negligence of the engineer in lowering and raising the elevator without warning, and without having received a signal to do so from the servants of the construction company, where the engineer was employed and paid by the elevator company to operate the elevator, and was acting within the scope of his employment when the accident occurred, having no connection with the work for which the person injured was employed, or which he was doing.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1213; Dec. Dig. § 301.*]

Appeal from Trial Term, Kings County.

Action by John Henry against the Stanley Hod Elevator Company. From a judgment for plaintiff, and the refusal of a new trial, defendant appeals.   Affirmed.

Argued before WOODWARD, HOOKER, GAYNOR, RICH, and MILLER, JJ.

Tallmadge W. Foster, for appellant.
Isaac M. Kapper (Thomas E. Pearsall, on the brief), for respondent.

RICH, J.   The material facts, which are uncontradicted, are as follows: The plaintiff, who was a common laborer, was an employé of J. T. Finn & Co., who were engaged in the erection of a six-story building.   The defendant furnished to Finn & Co. a hoisting elevator,

with all of its appliances, including fuel, an engine, and an engineer to operate it when in use. The engine was to be located at such point as the foreman of Finn & Co. designated, and the elevator used for carrying the material owned by the company to the different floors of the building for use. At the time of making the contract the foreman of Finn & Co. "wanted to know, in placing the engineer, if the engineer was not satisfactory, could he remove him and get another one," and was informed that he could. The elevator was rigged at first for one story, and changed by the defendant to carry to the additional higher stories as the building progressed. After it was set up, the defendant sent an engineer to operate it, who served two or three weeks, when work was stopped for a time, and upon its resumption one Ellis was placed in charge of the engine, and continued until the day of the accident, when he was taken away, and the defendant placed one Rhodes in charge. Each of these engineers had been in the employ of the defendant for some time prior to the time when the elevator was rented to Finn & Co., and remained in its employ, and they were used in running the defendant's elevators that were rented to different parties for hoisting purposes. Rhodes was hired and paid by the defendant. He reported for work to the foreman of Finn & Co. on the morning of June 8, 1905, and was directed to "start at 10 o'clock"—to "be all ready" at that hour. The movement of the elevator was regulated by strokes upon an eight-inch gong, fastened on the girder at the elevator shaft on the first floor of the building, given by pulling a rope attached to it, from either floor of the building. The elevator carried two wheelbarrows side by side. In loading, the employé of Finn & Co. after wheeling the second barrow on, would strike one stroke on the gong, which was a signal to the engineer, stationed 45 feet away, that the elevator was to go up. On being unloaded, the two empty barrows were wheeled on, and the employé, after wheeling on the last barrow, caused two strokes to be sounded on the gong, which was a signal to the engineer to lower the elevator. The latter had no means of knowing where the elevator was, or in which direction it was to be moved, except by the gong signals. On June 8, 1905, the building had progressed to the fifth floor, on which work was being done by the plaintiff and other workmen. Rhodes started the elevator as directed at 10 o'clock, and continued to operate it during the day. In the early afternoon two loaded barrows were sent to the top floor, where they were removed, and the plaintiff started to wheel an empty barrow on the elevator. As the wheel of the barrow struck the floor of the elevator, the engineer, without signal or warning, lowered the elevator a story and a half, and immediately sent it quickly back to the top floor.

While there is a conflict in the evidence as to whether a signal was given, the jury have resolved the question in favor of the plaintiff's contention, and we must adopt their conclusion; it being based on preponderating evidence. When the elevator was lowered, it left the barrow in the opening; the plaintiff hanging onto the handles to prevent its falling, and endeavoring to pull it back out of the shaft or opening. On its return the elevator struck the barrow, raising and

throwing it against the body of the plaintiff, throwing him from the place where he was working·to the ground below, and inflicting serious injury upon him.   These facts being found, the liability of the defendant is established within the principles declared in Mills v. Thomas Elevator Co., 54 App. Div. 124, 66 N. Y. Supp. 398, affirmed without opinion 172 N. Y. 660, 65 N. E. 1119; Moran v. Carlson, 95 App. Div. 116, 88 N. Y. Supp. 520; McDonough v. Pelham Hod Elevating Co., 111 App. Div. 585, 98 N. Y. Supp. 90; Sanford v. Standard Oil Co., 118 N. Y. 571, 24 N. E. 313, 16 Am. St. Rep. 787; Murray v. Dwight, 161 N. Y. 301, 55 N. E. 901, 48 L. R. A. 673.

It is strenuously contended by counsel for the appellant that the case at bar is to be distinguished from the Mills and Moran Cases, because of the fact that in the case at bar Finn & Co. had the right to discharge the engineer, Rhodes; which element was lacking in the cases referred to.   There was sufficient conflict in the evidence of Moran, the agent acting for the defendant in renting the elevator to Finn & Co., and that of Albrecht, the foreman of the latter, as to whether the engineer preceding Rhodes was sent by defendant, or employed by Finn & Co., and whether the latter was given the right to discharge Rhodes, to justify the trial court in submitting the question of whether Rhodes was the servant of the defendant or of Finn & Co. to the jury; and one of the questions submitted to the jury was whether or not Finn & Co. had a right at any time, with or without good cause, to discharge Rhodes and employ another engineer without consulting the elevator company.   The jury resolved this question in the negative, and we would hardly be justified in considering as an existent fact that which the jury on sufficient evidence found did not exist.   But, were this otherwise, and the question properly before us for consideration, we do not think the evidence warrants the conclusion we are asked to reach.

It is apparent that the defendant intended to retain charge of its elevator and the machinery connected with its operation, and operate it by its employés.   The language used, as testified to by Moran, the man who, representing the defendant, gave the only authority Finn & Co. specifically had, that if the engineer sent was not satisfactory the latter could "remove him and get another one," is in effect that the foreman, if not satisfied, could dispense with the services of the engineer sent, and get another one from the defendant, and not, independent of the wishes of the latter, employ whom he saw fit.   Finn & Co., or its foreman, could not discharge the engineer sent at will. The most it could do, if he was not satisfactory, was to dispense with his services on that particular job and require the defendant to send another of its engineers to take his place, and the engineer whose services were thus dispensed with by Finn & Co. yet remained in the employ of defendant.   The defendant under its contract was not obligated to send any particular engineer, or permit any engineer to remain for any specified length of time.   It could send a different engineer every day, and discharge any one sent at any time, irrespective of the wishes of Finn & Co., so that it had absolute control of the engineer at all times.   He simply took direction from the employés of the latter as to when he should raise or lower the elevator when in use.   The

defendant did not relinquish control of either its engineer or property he was operating. The fact that he reported for work to the foreman, and received direction from the employés of Finn & Co. when to raise and lower the elevator, did not operate to change his relation to the defendant as its servant. Johnson v. Netherlands American Steam Navigation Co., 132 N. Y. 576, 30 N. E. 505.

The learned counsel for the appellant overlooks the distinction between the cases cited to sustain his contention of nonliability and the case at bar, which is pointed out in Breslin v. Spraks, 97 App. Div. 69, 89 N. Y. Supp. 627, namely, that in this case the plaintiff and the engineer were not engaged in the same employment. The latter was employed and paid by the defendant to operate the elevator, and was acting within the scope of his employment when the accident occurred. He had no connection with the work for which the plaintiff was employed, or which he was doing, and was not, therefore, a fellow servant.

The judgment and order must be affirmed, with costs. All concur.