(64 Misc. Rep. 167.)

### KOLNITSKY v. MATTHEWS.

(City Court of New York, Trial Term. July, 1909.)

1. MASTER AND SERVANT (§ 301*)—INJURIES TO THIRD PERSON—EXISTENCE OF RELATION.

Whether the relation of master and servant exists does not necessarily depend on the payment of wages, but on whether at the time of the injury complained of the alleged servant is engaged in the business of the alleged master and is subject to his direction and control as of right.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1210–1216; Dec. Dig. § 301.*]

2. MASTER AND SERVANT (§ 301*)—INJURIES TO THIRD PERSON—RESPONDEAT SUPERIOR—EVIDENCE.

Defendant, not having sufficient horses and drivers for the delivery of his wares, contracted with a liveryman to furnish horses and drivers to be used in connection with defendant's wagons. The liveryman furnished a driver with a team, which was attached to one of defendant's wagons on the day of the injury under the arrangement. The wagon was loaded with defendant's wares, which were delivered under the direction of one of defendant's employés, who accompanied the driver. The driver drove so close to a street car that plaintiff, attempting to board it, was struck by one of the wheels and injured. *Held*, that the relation of master and servant existed between defendant and the driver, and that defendant was liable for the driver's negligence.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 301.*]

Action by Solomon Kolnitsky against John Matthews. Verdict for plaintiff. Defendant moves to set aside verdict and for new trial. Denied.

Rabinowitz & Perlo (Lynn W. Thompson, of counsel), for plaintiff. James B. Henney, for defendant.

FINELITE, J. A jury having found a verdict in favor of the plaintiff, a motion was made by the defendant on the judge's minutes to set aside the verdict and for a new trial. Decision was reserved on said motion on the question whether the defendant controlled the driver whose alleged negligence caused the injuries to the plaintiff. In other words, was the driver of the wagon in the employ of the servant ad hoc of the defendant at the time of the alleged accident? The contention of the defendant is that the driver of the truck was not its servant, and that the doctrine of respondeat superior does not apply.

It appears from the facts testified to at the trial that on the 22d day of May, 1907, the plaintiff, while about to board a north-bound Madison Avenue car, at the Bowery and East Fourth street, in the borough of Manhattan, city of New York, received injuries to his right foot by one of the wheels of a truck belonging to the defendant running over, crushing, and fracturing the same, and preventing him from using it for a period of nine weeks, and was and still is compelled to use a brace. It was conceded at the trial that the defendant owned the wagon, but not the horses that were being driven by the driver at the time of the injury to the plaintiff. The defendant is in the manufac-

turing business of soda water, doing a large business throughout the city. At the time of the alleged injuries to the plaintiff it was the busy season for the defendant, and it was obliged to get additional help to deliver the soda water manufactured by it throughout the city, and thereupon made arrangements with one McMahon, in the stable and delivery business, to supply the horses and drivers. The bills for the use of the horses and drivers were paid semimonthly to McMahon. On the day in question a driver and horses were supplied to the defendant by McMahon, as testified to by one Hein, a witness who testified that he had charge of the delivery and shipment branch of the defendant's business. During these months there was not sufficient help kept by defendant, and when the rush came he hired horses as they were needed for the carrying on of said business, and, as he testified, "we did not have enough horses in the stable of our own, so we hired horses." On the morning in question a driver by the name of Day arrived with horses from McMahon's stable at defendant's place of business. Defendant's wagon was loaded with soda water cans. These cans belonging to the defendant were to be delivered throughout the city of New York to the customers of the defendant. When the said wagon, loaded so with cans, left the defendant's place of business, one Charles Woelz, an employé of the defendant, accompanied the driver, whose duties were to visit the defendant's customers to deliver supplies, if needed, which were taken from the wagon that day. Woelz collected the money from the defendant's customers. He kept an order book, and marked down the number of cans delivered and the number of empty cans taken away. He directed the driver where to go that day. When the truck was driven home it had on it 15 loaded and a number of empty soda water cans, and as it reached East Fourth street, at the Bowery, the driver was driving at a fair rate of speed and so close to the car that the plaintiff, who was attempting to board the car, was struck and injured.

The recent decisions in this state seem to be uniform in the assertion that the true test as to whether the relation of master and servant exists is not necessarily the payment of wages, but is whether at the time of the injury complained of the alleged servant is engaged in the business of the alleged master and subject to his direction and control. It is not so much the actual exercise of control which is regarded as the right to exercise such control. As was said by Hirschberg, J., in the case of Baldwin v. Abrahams, 57 App. Div. 67, 73, 67 N. Y. Supp. 1079, 1082, affirmed in 171 N. Y. 677, 64 N. E. 1118:

"Even on the forced assumption that the truck in question was one of those hired by written contract, the law would seem well settled in this state to the effect that a question is presented for the consideration of the jury. They would be required to decide under the terms of the contract, viewed in the light of its purpose and the mode actually adopted in its execution and performance, whether the contractor actually made the deliveries, or whether his contract was limited to furnishing the defendant with the means to enable the latter to do so. In the one view the driver might be regarded as working at the time in the business of the contractor, and in the other view as working in the business of the defendants. The control over the driver, depending as a legal right upon the determination of this question, would be decisive of the case."

In Wyllie v. Palmer, 137 N. Y. 248, at page 257, 33 N. E. 381, at page 384, 19 L. R. A. 285, cited in the Baldwin v. Abrahams Case, O'Brien, J., says the following:

"The fact that a party to whose wrongful or negligent act an injury may be traced was at the time in the general employment and pay of another person does not necessarily make the latter the master and responsible for his acts. The master is the person in whose business he is engaged at the time, and who has the right to control and direct his conduct. The rule on this subject is well stated by a learned author on the Law of Negligence, as follows: 'He is to be deemed the master who has the supreme choice, control, and direction of the servant, and whose will the servant represents, not merely in the ultimate result of his work, but in all its details. The payment of an employé by the day, or the control and supervision of the work by the employer, though important considerations, are not in themselves decisive of the fact that the two are master and servant.' * * * Servants who are employed and paid by one person may nevertheless be ad hoc the servants of another in a particular transaction, and that, too, where their general employer is interested in the work. They may, without consulting their master, but in good faith, assist a person independently employed to do something which shall benefit their master, but with which neither he nor they have any right to interfere, and in which they act entirely under the control of such other person. In none of these cases is the nominal master responsible to strangers for their acts or omissions."

In Higgins v. Western Union Tel. Co., 156 N. Y. 75, 78, 50 N. E. 500, 66 Am. St. Rep. 537, also cited in the Baldwin Case, O'Brien, J., says, at page 76 of 57 App. Div., and page 1085 of 67 N. Y. Supp., as follows:

"The general rule is that a party injured by the negligence of another must seek his remedy against the person who caused the injury, and that such person alone is liable. The case of master and servant is an exception to the rule, and the negligence of the servant while acting within the scope of his employment is imputable to the master. Engel v. Eureka Club, 137 N. Y. 100, 32 N. E. 1052, 33 Am. St. Rep. 692. But the doctrine of respondeat superior applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of the wrong, at the time and in respect to the very transaction out of which the injury arose. The fact that the party to whose wrongful or negligent act an injury may be traced was at the time in the general employment and pay of another person does not necessarily make the latter the master and responsible for his acts. The master is the person in whose business he is engaged at the time and who has the right to control and direct his conduct. Servants who are employed and paid by one person may nevertheless be ad hoc the servants of another in a particular transaction, and that, too, when their general employer is interested in the work. Wyllie v. Palmer, 137 N. Y. 248, 33 N. E. 381, 19 L. R. A. 285."

At page 79 of 156 N. Y., and page 502 of 50 N. E. (66 Am. St. Rep. 537), in the same case the court further says:

"I am unable to distinguish this case in principle from the cases in this court already cited, and the best-considered cases in other jurisdictions are to the same effect. Murray v. Currie, L. R. 6 C. P. 26; Rourke v. Colliery Co., 2 C. P. Div. 205. In the latter case, Lord Cockburn stated the rule in these words: 'But when one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him.' The true test in such cases is to ascertain who directs the movements of the person committing the injury."

In the case at bar, it appears from the evidence that Day, the driver, was under the management, control, and direction of Woélz, the employé of the defendant, and under the latter's direction was driving the wagon loaded with cans to the defendant's place of business at the time of the accident, thus clearly establishing the fact that the defendant had at that time the right to control and direct the movements of the driver, Day, even though not directly in its employ, as was said in the case of Cunningham v. Syracuse Imp. Co., 20 App. Div. 176, 46 N. Y. Supp. 957, wherein Adams, J., writing the opinion, says:

"When we come to apply the rule as it is thus stated to the present case, we are unable to see why it does not necessarily dispose of the question we have been considering; for, as has already been stated, the plaintiff at the time he received his injury was engaged in performing services for the defendant, who had the right and did actually assume to control his conduct. For any misconduct or inability to perform the services required of him the defendant could undoubtedly have discharged him and returned him to his general employer."

In the case of Howard v. Ludwig, 57 App. Div. 96, 67 N. Y. Supp. 1095, affirmed 171 N. Y. 507, 64 N. E. 172, which is not exactly similar in point, but is analogous thereto, Haight, J., writing for the court, says, at page 509 of 171 N. Y., and page 173 of 64 N. E., as follows:

"It appears that the defendants were dealers in furniture at Nos. 34 and 36 West Fourteenth street, in the city of New York, as copartners, under the name of Ludwig Bros., and that they made sales of their goods throughout the city and surrounding country, including Staten Island, in the county of Richmond. It also appears that a man by the name of Albersmyer and another by the name of Bickart were engaged in the trucking business under the name of 'University Express Company,' and as such owned the truck and horses and employed the driver who caused the accident. The arrangement between the truckman and the defendants appears to rest in some confusion. It was oral and had been in some operation a number of years. The truckman furnished the defendants each day with a truck, horses, and driver for the purpose of delivering goods sold by them to their Staten Island customers, and for this the truckmen were paid by the defendants $30 a week. The defendant Ludwig testified with much distinctness that the agreement was that the truckmen should deliver all of the defendants' Staten Island sales for $30 a week, whether great or small in amount, and that for every truck used by the defendants for their deliveries in the city of New York they should pay $5 per day. The testimony of Ludwig is corroborated to some extent by that of Schoolhouse, who also states that it was the understanding that in case a package was lost the truckman should be responsible for it. The truckman, Bickart, while conceding that they were to furnish the defendants with a team, truck, and man for their Staten Island deliveries to make upon the island, the defendants used the man, truck, and team for their New York deliveries without additional compensation to them. The testimony of Albersmyer and of the driver throws but little light upon the question of the difference between these witnesses. It further appears that there was painted upon the truck generally used in the delivery of their Staten Island goods the name of 'Ludwig Bros.,' and that the defendants paid the ferriage on the trucks going from New York to the island each day. If, as is claimed by the defendants, the contract was that the express company was to deliver all of the goods sold by the defendants on Staten Island each week for $30 and the company was to be responsible for the goods, if lost, then unquestionably the defendants would not be liable in this action. But if, instead thereof, the arrangement was that the defendants should pay $30 a week for the team, truck, and driver, and they took charge of the delivery of the goods, sending the team to Staten Island or around New York making deliveries, as the exigency

of their business required, then the relation of master and servant was created between them and the driver, and they became liable for his negligent acts."

In the case at bar, the control of the driver was in the hands of the defendant, the wagon was owned by the defendant, and instead of giving the driver, Day, a list of customers to whom deliveries should be made, and from whom he was to receive empty cans, the defendant had Woelz, its employé, accompany said Day, and direct the latter where to drive and where deliveries should be made, and where empty cans should be collected.

In Linnehan v. Rollins, 137 Mass. 125, 50 Am. Rep. 287, among the instructions which the court sanctioned and approved was one to the effect:

"That the absolute test is not the exercise of the power of control, but the right to exercise power to control."

The defendant cannot contend, because the driver was furnished by McMahon, whose bills were paid every two weeks for the use of the horses and driver, that, the plaintiff, being injured through the negligence of such driver, Day, the defendant had no control or supervision over the driver, Day. To say, as is contended under such circumstances, that the defendant would be responsible only for the negligence on the public streets of their regular servants, but not for that of those thus temporarily hired, is so repugnant to reason and justice that it would be little short of amazing if that contention had found approval in the adjudications of the state. It certainly finds no sanction in any authoritative case cited by defendant's counsel.

In Howard v. Ludwig, supra, the court below, in 57 App. Div. 96, 67 N. Y. Supp. 1095, at page 1096, Hirschberg, J., writing, says:

"I am satisfied from the evidence that the contract required Albersmyer and Bickart to furnish the wagon, horses, and driver to the defendants, in order to enable the latter to make the deliveries in question, and that they were actually placed under the control of the defendants for that purpose. Although the driver was not hired or paid by them, and they could not have discharged him from his general employment, yet he was their servant at the time of the accident, in a sense and degree which served to render them liable for his negligence under the doctrine of respondeat superior. Although the driver was employed generally in the express business, he was by virtue of the contract between his employer and the defendants actually engaged at the time of the collision in the furniture business, and was occupied in delivering furniture as a part of and pursuant to the defendant's contracts of sale. * * * The fact that the defendants were permitted to put their own name and address upon the wagon as an advertisement to the general public that it was theirs, or at least in use in their business, is one of great significance in determining in whose service, within the law of negligence, the driver is to be regarded as driving at the time of the accident, and to my mind leads to but one conclusion."

At page 1097 of 67 N. Y. Supp., and page 97 of 57 App. Div., in the same opinion, the court further says:

"It follows that at the time of the accident the driver was not engaged in the express business, but was specifically fulfilling the defendant's contracts by delivering the goods which they had sold and agreed to deliver. In other words, he was carrying out their contracts of sale and delivery. He was subject to their orders and control for the time being in the same sense, if not to the same extent, as he would have been had they hired him directly to drive their own truck and horses."

The cases cited and relied upon by the defendant, Bohan v. Metropolitan Express Co., 122 App. Div. 590, 594, 107 N. Y. Supp. 530, Lewis v. Long Island R. R., 162 N. Y. 52, 66, 56 N. E. 548, Johnson v. N. A. S. N. Co., 132 N. Y. 576, 30 N. E. 505, and Henry v. Stanley Hod Elevator Co., 129 App. Div. 613, 616, 114 N. Y. Supp. 38, are not applicable to, but are distinguishable from, the case at bar. In Bohan v. Metropolitan Express Co., supra, the court approved the doctrine laid down in Baldwin v. Abrahams and Howard v. Ludwig, supra. In Bohan v. Metropolitan Express Co., supra, at page 594 of 122 App. Div. and page 533 of 107 N. Y. Supp., the court points out the distinction by saying the following:

"At the time of the accident, he, the driver, had delivered all the packages for the defendant, and was not then engaged in doing any work for it. He was then either taking the vehicle to the transportation company's office to have it repaired or else was engaged in his personal business, and in neither case can it be said that he was acting as a servant of the defendant or engaged in its business."

In Henry v. Stanley Hod Elevator Co., supra, the decision and results arrived at were based upon different facts and theories than the case at bar and the Baldwin and Howard Cases, supra, and in those cases the court stated that the distinction in Breslin v. Sparks, 97 App. Div. 69, 89 N. Y. Supp. 627, was not observed. This latter case approved the Baldwin and Howard Cases, supra, and distinguishes Mills v. Thomas Elevator Co., 54 App. Div. 124, 66 N. Y. Supp. 398, affirmed without opinion, 172 N. Y. 660, 65 N. E. 1119, upon which the decision in Henry v. Stanley Hod Elevator Co., supra, is based. It is apparent that in the decision of the Henry Case the court recognized the distinction in the cases cited above.

The amount awarded by the jury is not excessive, considering the nature of the injury suffered and the extent thereof, and the pain and suffering attendant thereto, and under the circumstances will let the verdict stand and deny this motion for a new trial.

Motion denied. Defendant may have 10 days' stay of execution after notice of entry of judgment and 30 days to make and serve a case.