EMELIA LISANTI, as Administratrix, etc., of FRANK LISANTI, Deceased, Respondent, *v.* WILLIAM F. KENNY Co., INC., Appellant.*

Second Department, December 21, 1928.

* Affd., 250 N. Y. 621.

*Theodore H. Lord* [*James B. Henney, Daniel Minor* and *Daniel R. Harvey* with him on the brief], for the appellant.

*George W. Smyth* [*Austin G. Cocuzza* with him on the brief], for the respondent.

KAPPER, J. The defendant was engaged in demolishing a temporary bridge in Queens county which had been used by the Long Island Railroad Company during the period of construction by the defendant of a new bridge. In this work of demolishing the temporary bridge, the defendant, under an arrangement with the Long Island Railroad Company, in whose employ the decedent had been for sixteen years, obtained the use of a crane and the services of the decedent as engineer of the crane, and a fireman, for the purpose of operating it. This particular work in which the decedent thus became engaged began August 1, 1927, and continued until September 2, 1927, on which day the accident occurred which caused his death. The crane consisted of a large steel derrick carried on a flat car, on which was also located a cab within which was a hoisting engine. In the work of demolishing the temporary bridge, this derrick was attached to a girder weighing sixteen tons. It happened to be the last girder to be lowered or taken away from this temporary bridge. It was the claim of the plaintiff that the arm or boom which raised or lowered the girder was affected by the working radius of the crane, such working radius becoming greater as the boom was lowered, in which event the lifting capacity of the derrick decreased proportionately; thus, according to the specifications, the lifting capacity at various radii was 31,500 pounds at twenty feet, 23,800 pounds at twenty-five feet and 18,800 pounds at thirty feet. Outriggers were furnished as a part of the equipment of the crane and came with it, their purpose being to increase the operating base and to stabilize the crane and prevent it from tipping, thus increasing the lifting capacity of the crane. The testimony was abundant that in every instance previous to the fatal one, when lifting girders of the same weight, the outriggers had been run out.

The negligence charged against the defendant was that the crane was negligently operated with too great a radius, and was

unable to lift the girder without toppling over; further, that the defendant's foreman and superintendent negligently failed to run out the outriggers and thereby secure the additional lifting capacity which was necessary to this operation. The result was that, as the crane started to lift this remaining girder as its first operation on the morning of September 2, 1927, the whole structure, derrick, crane and all, toppled to the street below, a distance of fifteen to eighteen feet (with the engineer Lisanti in the cab of the crane), carrying with it the tracks and ties for a distance of about seventy-five feet, and resulting in the death of decedent.

The main question which this appeal presents is whether the decedent was the *ad hoc* servant of the defendant, the company having the contract for the erection of the new bridge and the demolition of the temporary one, or whether the decedent continued and remained the employee of the Long Island Railroad Company, concededly his general master, who hired him, paid him, directed him to go to this work, placing him in charge of its property, the car, engine and crane, and reserved the power to discharge him. Undoubtedly, if the situation required us to hold that the decedent became the *ad hoc* servant of the defendant, the negligence of the defendant's general employees in not properly loading this derrick with the boom to be hoisted and lowered, would be regarded as the negligence of fellow-servants and the result of such holding would be to exculpate the defendant from liability.

While the defendant had a written contract with the Long Island Railroad Company for the erection of the new bridge and the removal of the temporary one, its agreement, characterized by the defendant as an " arrangement " for the use of the crane and its appliances as well as the engineer and fireman to operate it, was oral. This agreement was testified to as in the following form: " The arrangement was that the William F. Kenny Company would pay the costs for the crane and the labor according to bills rendered by the Railroad Company, plus a certain percentage for overhead, and Workmen's Compensation and liability insurance to be added afterwards."

The appellant does not claim that it possessed the power to discharge the deceased or to hire any one in his place to operate the engine which controlled the movements of the crane. It was admitted that the decedent received his wages from his general employer, the Long Island Railroad Company, during all the period that he was operating this crane in the removal of the temporary bridge. He remained on the railroad company's payroll all of the time. Agreeable to the " arrangement " between the railroad company and the defendant, the defendant paid the bills

of the Long Island Railroad Company for the use of the crane, the services of the deceased engineer and the fireman, the cost of the workmen's compensation insurance, and the percentage for overhead. The testimony of the defendant's foreman was that the defendant never interfered with the operation of the crane and that the decedent had full charge of all the work incidental to the operation of the crane, its mechanism, the handling of the levers and the brakes. The raising and lowering of the girder in question was controlled entirely in the cab by the decedent as the operator of the crane. The testimony of this foreman further was that the defendant and its employees " never interfered " with the operation of this crane and that Lisanti (decedent) had full charge of the operation.

While the decedent was described as " expert in his operation of the crane," he was admitted by the defendant's construction engineer to be without expert knowledge with reference to the question of the radius for the lifting of the girders, as to which " he had no technical knowledge." At the same time, the setting of the radius for the lifting of the girders " was a matter of technical knowledge." That it was the decedent's duty to so operate his engine as to lift the girder by means of the steam crane, and to back the crane along the tracks under its own power to the railroad flat cars waiting to receive the girder and to place the girder on such flat car to be then taken to the railroad company's storage yards, was also established without dispute.

I have already referred to the duty of the defendant to safely attach the girder to the derrick or boom of the crane. When this was done the next step would be a signal to the engineer to start the operation, by means of his engine and levers, of hoisting the load. The grease and oil for the crane were furnished by the railroad company and all repairs to the appliance needed were made or to be made by it.

A change of masters so as to make a general employee a special, or for the time being the employee of another or special master, can only be brought about with the knowledge or consent of the servant. " The new relation cannot be thrust upon the servant without knowledge or consent." (*Murray* v. *Union Railway Co.*, 229 N. Y. 110, 113.) Judge CARDOZO, writing for the court in the case cited, added: " He must understand that he is submitting himself to the control of a new master. We are not concerned at the moment with cases in which the rights of third persons are involved. We speak of cases where the parties to the disputed relation are the parties to the controversy. Understanding may be inferred from circumstances, but understanding there must be. Common-law

rights and remedies are not lost by stumbling unawares into a new contractual relation. There can be no unwitting transfer from one service to another. If understanding of a new relation may be imputed to the plaintiff, it is at most an inference of fact to be drawn by a jury. Nothing in the situation as he knew it made the inference inevitable. He is not chargeable with the legal consequences of the arrangement between the bureau and the railroad as actually made. He is chargeable only with the legal consequences of the arrangement as known and approved."

In the case now before us the jury were directed to find a special verdict besides a general verdict, the special verdict requiring an answer to the following question: " Was Frank Lisanti in the employ of the William F. Kenny Company, Incorporated, at the time of the accident? " To this question the jury answered " No." The learned trial justice submitted this proposition in almost the identical language uttered in the *Murray Case (supra)*. The learned trial justice also charged, without exception: " If you find that Frank Lisanti remained subject to the general orders of the Long Island Railroad Company, and that the Long Island Railroad Company paid him, he was still the employee of the Long Island Railroad Company although specific directions were given him by the William F. Kenny Company from time to time as to the work to be done."

The recent case of *Bartolomeo* v. *Bennett Contracting Co.* (245 N. Y. 66) was not unlike the case at bar, with the exception that the defendant was charged, as general employer of the engineer of a steam shovel hired from it by a contracting firm, with the engineer's negligence which caused the death of an employee of the contracting firm. The distinction in the respect stated is one without difference. The general employer was relieved from liability by the courts below upon the *ad hoc* theory. The Court of Appeals reversed for error in holding as matter of law that the engineer of the steam shovel was the servant of the contracting firm who hired the steam shovel from the defendant together with the men to run it. The situation as detailed by Judge KELLOGG, writing for a unanimous court, applies quite closely to the facts in the present case. He said (p. 69): " It [the contracting firm] gave no directions as to the details of the work, such as firing the boiler, regulating the steam pressure, applying the levers to start and stop the machinery, maneuvering the boom and bucket, oiling the machinery or giving care to the steam shovel to keep it in working order. It was important to the defendant, as the owner of the machine, in order that the life of the machine might be preserved, that the engineer and fireman, in respect to these and other details, perform

their work with care, skill and judgment. When originally employed the engineer and fireman subjected themselves to the orders of the defendant in respect to all such matters and became liable to discharge at the defendant's hands if its orders were disobeyed. In the absence of proof that the defendant, the general employer, surrendered control, in these respects, to the Powers-Kennedy Company, as special employer, it must be presumed that the defendant's power of control continued."

And there was quoted with approval in the case last cited the following from McNamara v. Leipzig (227 N. Y. 291, 295): "A servant lent or let by his master to another does not become the servant of the other because the other directs what work is to be done or in what way it is to be done. If the servant remains subject to the general orders of the person who hires and pays him he is still his servant, although specific directions may be given him by the other from time to time as to the work to be done."

The case in its essential particulars may also be said to have been determined adversely to the appellant in Henry v. Stanley Hod Elevator Co. (129 App. Div. 613). That case came to this court. In brief, it involved the liability of the defendant Stanley Hod Elevator Company for the negligence of its engineer in the operation of the hod elevator which caused an injury to an employee of Finn & Co., the construction company that had made a contract with the defendant to install the hoisting elevator and to operate it by the defendant's own engineer. The defendant was held liable, this court, speaking through Mr. Justice Rich, saying (p. 616): "The language used, as testified to by Moran, the man who, representing the defendant, gave the only authority Finn & Co. specifically had, that if the engineer sent was not satisfactory the latter could 'remove him and get another one,' is in effect that the foreman if not satisfied could dispense with the services of the engineer sent, and get another one from the defendant, and not, independent of the wishes of the latter, employ whom he saw fit. Finn & Co. or its foreman could not discharge the engineer sent at will. The most it could do, if he was not satisfactory, was to dispense with his services on that particular job and require the defendant to send another of its engineers to take his place, and the engineer whose services were thus dispensed with by Finn & Co. yet remained in the employ of defendant. The defendant under its contract was not obligated to send any particular engineer or permit any engineer to remain for any specified length of time. It could send a different engineer every day and discharge any one sent at any time, irrespective of the wishes of Finn & Co., so that it had absolute control of the engineer at all times; he simply took direction from

the employees of the latter as to when he should raise or lower the elevator when in use. The defendant did not relinquish control of either its engineer or property he was operating. The fact that he reported for work to the foreman and received direction from the employees of Finn & Co. when to raise and lower the elevator did not operate to change his relation to the defendant as its servant."

In the light of the law, and the facts of the case, I am of the opinion that if the question of who was the master of the decedent was not one of law to be determined in favor of the decedent, it was, in so far as the defendant was concerned, at best a question of fact. That having been decided by the jury adversely to the defendant, the result should not be disturbed.

The appellant claims error in the admission of evidence tending to show it to have been the practice of the Long Island Railroad Company to give to its employees who temporarily left its employ a release or furlough. The evidence does not seem to me to have been irrelevant, which is the ground upon which the appellant attacks it. In the light of the principles announced in *Murray* v. *Union Railway Co. (supra)*, this practice of the railroad company, which had continued over a great many years and longer than the sixteen years of the decedent's employment by that company, it being shown in connection therewith that no such release or furlough had been granted to the decedent by the railroad company, made it a fair subject of inquiry in a determination of the knowledge possessed by the decedent or his understanding of any arrangement whereby his employer had been changed. While evidence that the decedent could have obtained a release or furlough from his employer, the railroad company, but did not do so, was not at all conclusive of the issue, yet it was not so remote but that its relevancy can be seen.

A further point of the appellant relates to rebuttal testimony given by an expert witness. In so far as the contention is based on the claim that this expert did not have before him a hypothetical question assuming the facts, but rested on evidence that he had heard given by other witnesses, the claim is without merit inasmuch as the only basis adopted was that which was actually testified to, such as the radius of the crane, the rebuttal witness accepting that testimony as his own. Other testimony was based upon the specifications of the crane that were in evidence, which the defendant admitted applied to this particular crane. In so far as the claim of error relates to the right to receive this evidence in rebuttal, its reception was a matter that rested in sound discretion, which I do not think was abused.

It is further alleged by the appellant that plaintiff's counsel made a reference to insurance; and numerous cases are cited which have

held it error to make a reference before the jury in a personal injury action, based upon negligence, to casualty insurance taken out by the defendant.

Such was not the case here, however. The insurance involved in this case, or brought into the record, was the so-called workmen's compensation insurance; and at the very outset of the case, in the opening of defendant's counsel, he himself injected the fact that the defendant had workmen's compensation insurance. To this statement plaintiff's counsel objected. The theory upon which this was brought into the case was that evolved by the defendant, to the effect that as a special employer it was equally liable with the general employer to meet an award under the Workmen's Compensation Law. (*Matter of De Noyer* v. *Cavanaugh*, 221 N. Y. 273; *Matter of Schweitzer* v. *Thompson & Norris Co.*, 229 id. 97.) During the trial, and over plaintiff's objection, the defendant offered and there was received in evidence the policy issued to the defendant by an insurance carrier covering the workmen's compensation to which the workmen might be entitled in case of injury in the course of their employment. Appellant's counsel argues strenuously that the references to this policy made by plaintiff's counsel in summing up were prejudicial and within the condemnation of the cases he cites. This case, in the circumstances, is not one where the subject of insurance could possibly arouse prejudice when the defendant relied upon that very insurance to establish that it had taken out workmen's compensation which rendered the decedent its employee, and to which scheme of compensation it urged upon the trial, as it urges here, the widow and next of kin should be remitted. It should be added that although such was the claim of the appellant its compensation policy does not bear it out, as there is nothing therein to indicate what employees the defendant was covering or that the employees of the Long Island Railroad Company were protected. The claim is wholly based upon the Court of Appeals decisions cited (*supra*), which indicate that compensation might be awarded against either the general employer or the special employer in certain circumstances.

The judgment should be affirmed, with costs.

Present — LAZANSKY, P. J., RICH, YOUNG, KAPPER and HAGARTY, JJ.

Judgment unanimously affirmed, with costs.