(15 App. Div. 241.)

### MURRAY v. DWIGHT.

(Supreme Court, Appellate Division, Third Department. March 12, 1897.)

1. MASTER AND SERVANT—FELLOW SERVANTS.

 The relation of master and servant does not exist between defendant and plaintiff so as to render applicable the rule in regard to injuries caused by the negligence of fellow servants, where plaintiff, a driver regularly employed and paid by a truckman, was, by agreement between the truckman and a third person, who usually furnished the power to operate defendant's hoist, sent, with a horse, to furnish such power for a day, and was injured while so engaged under direction of defendant's foreman.

2. SAME—CONTRIBUTORY NEGLIGENCE—INVITATION.

 A truckman's driver, sent to drive a horse on another man's hoist in a place of which he knew nothing, is not guilty of contributory negligence in attempting, on the invitation of the person managing the hoist, to enter at a door under a pulley block, by the falling of which he was injured.

 Herrick, J., dissenting.

Appeal from circuit court, Albany county.

Action by J. Francis Murray, an infant, by Catherine Murray, his guardian ad litem, against Harvey A. Dwight. From a judgment of nonsuit, plaintiff appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Countryman & Du Bois, for appellant.

Eugene Burlingame, for respondent.

MERWIN, J. The plaintiff in this case seeks to recover damages for a personal injury received by him on the 24th March, 1894, from the falling of a pulley block in front of a warehouse of defendant. From the evidence it might be found that the block fell by reason of the negligence of employés of defendant, and the question here is whether the plaintiff was a co-employé, and therefore the defendant not liable. It was so held by the trial court.

The defendant maintains two storehouses, in each of which there is a hoisting apparatus for the purpose of hoisting and lowering heavy articles from one story to another. There is a projection at the roof, where there is an iron wheel, over which a chain passes down in front of the building, and about a foot and a half therefrom. This chain, at the roof, passes into the building, and around

a drum, and thence to the back part of the building. An endless rope is attached to the drum, by means of which a man in the building may operate it, and hoist or lower the chain outside. If it is desired to use horse power in hoisting, a pulley block is attached to the door post in the lower story, and another pulley block with tackle is hooked onto the chain, and drawn up to the top of the building. A rope, connected with the upper block, passes down and over the lower pulley, and thence into the basement, and to this a horse is attached. In operating the tackle, the horse moves forward and backward within the building. The plaintiff was in the employ of one McManus, a truckman, and was then about 20 years old. Upon the morning in question he was sent by McManus, with a horse to hoist at the defendant's. This was done by McManus at the request of Reed & Co., who usually did this kind of work for the defendant. The plaintiff, upon arriving at one of the storehouses. took the horse into the basement through the front door, and was there at work about two hours. The horse was attached to the rope, and the plaintiff led it up and down the floor, and that was all that he did. The whole work was under the general direction of Mr. Bailey, the foreman of defendant. The plaintiff was told when to move forward, when to stop, and when to back up. Having finished at that storehouse, all proceeded to the other, the pulley blocks being taken along, and the plaintiff being told to bring his horse along. Arriving at the other storehouse, the plaintiff, with his horse, stopped near the curbstone in front of the door, while the other men were putting in place the pulley blocks and tackle. The upper pulley block was hooked onto the chain, and was being drawn up to its place by one of the men operating the drum inside. When the block was nearly up, the plaintiff was told to come in, and as he started to do so the block fell, and he was hit. The plaintiff had not worked there before, and, as he testifies, knew nothing about the apparatus there for hoisting. He had nothing to do with placing it in position. The horse belonged to Mr. McManus, and the plaintiff was paid by him. It does not appear what the arrangement was between Reed & Co. and the defendant. The question is whether the defendant is entitled to the benefit of the rule that a master is not liable to an employé for an injury resulting from the negligence of a co-employé.

"In order to establish the liability of one person for an injury caused by the negligence of another, it is not enough to show that the latter was at the time acting under an employment by the former; it must be shown, in addition, that the employment created the relation of master and servant." Hexamer v. Webb, 101 N. Y. 377, 4 N. E. 755; King v. Railroad Co., 66 N. Y. 184; Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017. In the latter case, the question involved being similar to the one in the present case, it is said by Judge Finch (page 108, 126 N. Y., and page 1018, 26 N. E.) that the relation exists when the employer selects the workman, may remove or discharge him for misconduct, and may order not only what work shall be done, but the mode and manner of performance. In Michael v. Stanton, 3 Hun, 462, where a master sent his servant, with a

team, to work for defendant, and, while doing such work, the servant, through his negligence, drove the wagon against the plaintiff's wagon, it was held that no cause of action existed against defendant, since he did not employ the servant, and had no power to discharge him from service; and it was said that this was the only test by which to determine which is the master, and as such liable to the person injured. The same view was taken in Gerlach v. Edelmeyer, 47 N. Y. Super. Ct. 295, affirmed 88 N. Y. 645. The general rule is that the immediate employer of the agent or servant through whose negligence an injury occurs is the person responsible for the negligence of such agent or servant. Blake v. Ferris, 5 N. Y. 49. See, also, Story, Ag. §§ 453, 456. The defendant did not hire or pay the plaintiff. He had no voice in his selection, which is an important element in the matter. The horse belonged to McManus, and the plaintiff's only duty was to drive it. The fact that the plaintiff received from the defendant's foreman orders when to go forward, or stop, or back up did not make plaintiff the servant of defendant. Johnson v. Navigation Co., 132 N. Y. 576, 30 N. E. 505.

The cases on this subject in different jurisdictions are not entirely harmonious. See Bailey, Mast. Liab. 226. In Hasty v. Sears, 157 Mass. 123, 31 N. E. 759, it was held that when one person lends his servant alone to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as a servant of the man to whom he is lent, although he remains the general servant of the person who lent him; and, if the servant receives injuries in such employment from the negligence of a servant of the person to whom he is lent, he cannot recover therefor. Stress was laid on the fact that the danger was so obvious that the plaintiff took the risk. That case followed the case of Rourke v. Colliery Co., 2 C. P. Div. 205. This is distinguished in the later case of Jones v. Mayor, etc., of Liverpool, 14 Q. B. Div. 890. In that case D. contracted with defendants to supply by the day a driver and horse to drive and draw a watering cart belonging to defendants, who directed what streets to water. It was held that the defendants were not liable for the negligence of the driver while in charge of the cart, following Quarman v. Burnett, 6 Mees. & W. 499, where it was held that the owner of a carriage, who for its use hired horses and a coachman from another, was not liable for the negligence of the coachman. So that apparently the hiring of a horse and driver for a particular service is on a different basis from the lending or hiring of one's servant alone. The principle of the rule under discussion is that the law implies, as part of the contract of service, that the servant agrees to and does assume the risk of injury from the negligence of other servants in the same business. He is presumed to have contracted with reference to such risks. Sherman v. Railroad Co., 17 N. Y. 156; Woods, Ry. Law, § 388. In Smith v. Railroad Co., 19 N. Y. 127, 132, Judge Selden says: "The rule applies only where the action is brought for an injury to a servant or agent against the principal by whom such servant was himself employed." There was no contract here between the plaintiff and the defendant, and therefore it would

seem that there was no basis for applying the principle invoked by the defendant. The plaintiff and the horse were sent at the request of Reed & Co., to enable the latter to perform an independent contract they had with the defendant. Assuming that the plaintiff, while in actual performance of the work which he was sent to do, was for some purposes the servant of defendant (McInerney v. Canal Co., 151 N. Y. 411, 45 N. E. 848), it does not follow that the defendant is entitled to the benefit of the rule he invokes. It will be observed that the accident occurred before the plaintiff arrived at the particular place where he, with the horse, was to perform the special work that they were sent to do. No duty was on the plaintiff as to the placing or management of the pulley blocks. That, in a certain sense, was the act of the defendant preparatory to the commencement of the work. So it may be said that the accident did not occur in the course of the work that the plaintiff went to do. He was only there to drive and manage the horse, and his work did not commence till the apparatus was in place. He was there to look after the property of his own master, and see that the defendant was furnished the power, which was the main thing he wanted.

Upon the facts presented in this case, the plaintiff, at the time of the accident, was not, I think, a fellow servant of the employés of defendant, within the rule that makes a master not liable to an employé for injuries resulting from the negligence of a co-employé, Nor do I think that it should be said as matter of law that the plaintiff was guilty of contributory negligence in entering the warehouse at the time he did. He was told to come in by the foreman of the defendant, or in his presence, and it might be found that he had no reason to apprehend danger. The risk was unknown to plaintiff, and not such an obvious one that he could necessarily be charged with it. It follows that the judgment should be reversed.

Judgment reversed, and a new trial granted; costs to abide the event.

PARKER, P. J., and LANDON and PUTNAM, JJ., concur.

HERRICK, J. (dissenting). I think that within the cases of Hasty v. Sears, 157 Mass. 123, 31 N. E. 759, and McInerney v. Canal Co., 151 N. Y. 411, 45 N. E. 848, Murray was the fellow servant with the employés of the defendant, and that his employment was continuous from the time he was engaged at the first store or building down to the time of the accident. The time during which he passed from one building to the other, and while he was waiting for the arrangement of the tackle, constituted no break in his employment, or change in the legal relationship between himself and the other people engaged in the work, and that, therefore, the judgment should be affirmed.