### FIESEL v. NEW. YORK EDISON. CO.

(Supreme Court, Appellate Division, Second Department. January 10, 1908.)

1. MASTER AND SERVANT—INJURIES TO THIRD PERSON—NEGLIGENCE—QUESTION FOR JURY.

In an action for death of plaintiff's intestate while attempting to operate an elevator which defendant's servant was repairing, caused by the latter's transposition of certain electric wires controlling the current which operated the elevator, whether such transposition was negligence was for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 1274.]

2. SAME—FELLOW SERVANTS.

Defendant having been employed to make certain repairs in electrical elevator appliances in the stable where intestate was employed, one of defendant's servants in the course of such work transposed the electric wires feeding the elevator motor, so as to reverse the operation of the machinery. He then called to intestate, who had sometimes operated the elevator to try it. Intestate pulled up on the rope, which would ordinarily make the car descend; but instead the car went up, and continued so to do until it struck the top of the shaft, when the cable pulled out, and the car fell, and intestate was killed. Defendant's servant was not in need of assistance, but could have performed the work himself or tested the machinery without operating the car. Held, that intestate, by acceding to the request to assist defendant's servant, did not temporarily be-

come a fellow servant, so as to relieve defendant from liability for his death.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 1216.]

Appeal from Trial Term, Kings County.

Action by Cathrin Fiesel, as administratrix of the estate of Francis Xavier Fiesel, deceased, against the New York Edison Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before JENKS, HOOKER, GAYNOR, RICH, and MILLER, JJ.

Charles I. Taylor (Henry J. Hemmens, on the brief), for appellant. F. Angelo Gaynor (John T. Smith, on the brief), for respondent.

GAYNOR, J. The defendant was making repairs and alterations in the electric installment of the stable where the deceased worked. Two wires connected the electric meter with the electric motor which ran the machinery of the freight elevator. One was the positive, i. e., the feed, and the other the negative, i. e., the return wire, i. e., the electric current was conveyed to the motor by the one, and returned to the meter by the other, the circuit being thus formed. The workman of the defendant disconnected these two wires and replaced them with new ones. He made a mistake and reversed or crossed them, as the jury found, i. e., he connected the wire from the positive pole of the meter with the negative pole of the motor, and vice versa with the other wire. The result was that the motion of the motor was reversed when the current was let on, and hence the motion of the elevator machinery and car also. Instead of the car being made to go up by pulling down on the rope, and to go down by pulling up on the rope, as was the normal condition, the car was given an opposite motion by the said reverse of the power, i. e., it went down if you pulled down on the rope and up if you pulled up.

When the defendant's workman got through with his work at the meter and wires it was his duty to test the elevator machinery in order to see that it worked normally and in order. This he could do by turning the current into the motor and running the machinery at the bottom of the elevator shaft which ran the elevator car, and observing it as it ran, for if it ran right it must run the car right. Instead he called up from the bottom of the shaft to the deceased who was about his own work on the second floor to run the car as he wanted to, try it. The deceased went upon the platform of the car, which was at the second floor, to do as requested. He was employed as a stableman to take care of a number of horses, but also ran the elevator now and then. The car immediately went up rapidly until the overhead frame or beam to which the lifting cable was attached struck the beams at the top of the shaft, and then fell to the bottom of the shaft, killing the deceased. The machinery of the elevator was so set that the platform of the car could go only to the level of the third floor, which was the top floor. When it got there, automatic contrivances stopped the machinery, which could be started again only by pulling up on the rope in order to go down. But the said reverse

motion of the machinery put such contrivances out of gear or use, and there was nothing to stop the car except the use of the handrope on the car, and the effect of pulling on that was reversed by the reverse motion of the machinery, as already stated. The jury therefore drew the legitimate inference that when the deceased went upon the car he pulled up on. the rope in order to make the car descend, but instead it made the car go up, and no matter how much he may have continued to pull up on the rope to stop the car or make it go down, as it should do (and. he was unaware of the change that had occurred) it continued to go up until it struck overhead; and after it struck the lifting cable continued to pull (for the machinery continued in motion) until it pulled out of the eye or socket of the overhead beam of the car, and then the car fell. The defendant's workman testified that when he called up to the deceased he told him to run the car up, but the jury were not obliged to believe this. The argument is that having been told to go up the deceased pulled the rope down, and as the car responded by going up, that showed that the machinery was working normally; and that therefore the wires had not been reversed. But if the wires were reversed, and the deceased pulled the rope with the intention to go up, he would have pulled it down, and the car would have gone down instead of going up.

It is plain that the deceased was killed by the way the wires were set by the defendant's workman, and it was for the jury to say if that was not negligence. But the claim is that the deceased was for the time being not in the service of his employer, the owner of the stable, but in that of the defendant, and therefore a fellow servant of the defendant's workman, in which case the negligence of such workman would defeat a recovery in this action. It must be owned that this is a question not free from difficulty. An emergency employé, called on by another employé to assist him, for however short a time, becomes a fellow servant, and subject to the rules of law applicable to the injury of a servant by his fellow. But he must be so called on as of necessity in order to make him an employé, for a servant has no authority to call on another to help him in his master's business as of necessity unless the necessity exists. If he can do the work himself, there is no occasion of necessity to imply power in him to employ assistance. Marks v. Rochester R. Co., 146 N. Y. 181, 40 N. E. 782; Marks v. Rochester R. Co., 41 App. Div. 66, 58 N. Y. Supp. 210; Wischam v. Rickards, 136 Pa. 109, 20 Atl. 532, 10 L. R. A. 97, 20 Am. St. Rep. 900; Olive v. Whitney Marble Co., 103 N. Y. 292, 8 N. E. 552. But in the present case the defendant's workman did not need the help of the deceased. It is undisputed and apparent on the evidence (if not a mechanical fact that judicial notice may be taken of) that he could have tested the set of his wires by revolving the machinery without running the car at all; and more than that, positive and negative poles can be ascertained by other simple tests well known to those who do electrical work.

The judgment should be affirmed.

Judgment and order unanimously affirmed, with costs. All concur.