(81 Misc. Rep. 310.)

WILLIAMS v. NEW YORK TELEPHONE CO.

(Supreme Court, Trial Term, Westchester County. June 4, 1913.)

MASTER AND SERVANT (§ 193*)—TELEGRAPHS AND TELEPHONES (§ 15*)—INJURIES TO THIRD PERSONS—LIABILITY—EMERGENCY EMPLOYÉ—FELLOW SERVANTS.

Plaintiff was an employé of the "emergency crew" of an electric railroad company, and was called out by his employer to clear away a telephone pole belonging to defendant telephone company, which had fallen across the railroad company's trolley wire; and when plaintiff reached the place defendant's employés were already cutting the wires from the telephone pole, and plaintiff and a fellow employé placed their shoulders under the pole to release its weight from the trolley wire, so as to prevent it from breaking, and while in that position the telephone company employés began to saw through the pole, and it broke off, and a part thereof fell upon plaintiff's foot and injured him. *Held*, that plaintiff was not a fellow servant of defendant's employés, and was working at his own employer's business when injured, and defendant was bound to exercise due care with respect to him, and was liable for any negligence of its employés in cutting off the telephone pole.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 480–485; Dec. Dig. § 193;* Telegraphs and Telephones, Cent. Dig. § 9; Dec. Dig. § 15.*]

Action by Levi Williams against the New York Telephone Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Sidney A. Syme, of Mt. Vernon, for plaintiff.
Charles T. Russell, of New York City, for defendant.

MORSCHAUSER, J.   On May 25, 1911, the plaintiff was in the employ of the Westchester Electric Railroad Company, Mt. Vernon, N. Y., being a member of what is known as the "emergency crew," which, in brief, was the crew attached to the wagon maintained by such railroad to answer alarms and make temporary repairs, where the wires of the railroad company fall in the streets, or where similar accidents occur.   On the day of the accident, between 5 and 6 p. m., an alarm was sent in calling the emergency crew to East Third street and Fulton avenue, where it was found that one of the telephone poles maintained by the defendant company had fallen across the overhead trolley wire of the railroad company, sagging it down, and had torn down two or three wires or sections at that time.   The telephone pole was located in the sidewalk, just inside of the curb, and had broken off just where it comes out of the ground, and had fallen out into the street, across the overhead trolley wire.

At the time the crew, of which plaintiff was a member, arrived, the defendant's employés, in charge of defendant's foreman, were already on the scene cutting the wires from the telephone pole.   Upon observing the situation, plaintiff and another member of the emergency crew immediately went to the fallen telephone pole, and placed their shoulders under the pole to hold it up, and to release its weight from the overhead trolley wire, so as to prevent the wire from breaking and dropping in the street.   The overhead wire at the time was charged with a high voltage of electricity.   While the plaintiff and his coservant were holding up the telephone pole, employés of the telephone company started to saw the pole near the crossarm end, and near the overhead trolley wire.   Before the telephone pole was sawed through, it snapped in two, and the upper section fell, striking the plaintiff on the foot, inflicting severe and permanent injuries.   It had no other support, except from plaintiff and a fellow servant.   Plaintiff seeks to recover damages for the injury sustained.

On disputed proof, the jury found a verdict of $3,000 for the plaintiff.   On the rendering of the verdict, a motion was made to set it aside, and the decision was reserved by consent of respective counsel, and they have waited some time before submitting to me their briefs. I believe that the verdict should not be disturbed.   The plaintiff was not a fellow servant of the defendant's employés, nor was he an emergency servant.   He was carrying on his master's business for the protection of his master's property and the safety of the public, and when he placed himself in the position of holding up the pole to relieve the strain on the overhead trolley wire, which strain increased by the action of the defendant's employés in cutting the telephone wires, he was carrying on his master's business.   At that time there was an obligation upon the defendant to exercise due care while doing the work.

I believe this case comes within the cases like Bill v. N. Y. Expanded Metal Co., 60 App. Div. 470, 471, 69 N. Y. Supp. 990, where it is tersely stated by Mr. Justice Jenks:

"The fact that there was no contract relation between plaintiff and defendant did not deprive the former of a cause of action; for there was an ob-

ligation upon the defendant to exercise due care while doing its work, if it might otherwise be a source of danger to the plaintiff, while lawfully engaged in his own work upon the building"—citing Wittenberg v. Seitz, 8 App. Div. 439, 40 N. Y. Supp. 899; Reilly v. Atlas Iron Construction Co., 83 Hun, 196, 31 N. Y. Supp. 618; s. c., 3 App. Div. 363, 38 N. Y. Supp. 485.

As was said by Mr. Justice Carr in Cannon v. Fargo, 138 App. Div. 20–24, 122 N. Y. Supp. 580:

"The fact that the servants of both companies were engaged in working for a common end does not make them necessarily fellow servants; for each set of servants were carrying out, respectively, the shares of their separate masters for the common end"—citing Murray v. Dwight, 161 N. Y. 301, 55 N. E. 901, 48 L. R. A. 673; Henry v. Stanley Hod Elevator Co., 129 App. Div. 613, 114 N. Y. Supp. 38; Sanford v. Standard Oil Co., 118 N. Y. 571, 24 N. E. 313, 16 Am. St. Rep. 787; Johnson v. Netherlands Amer. Steam Nav. Co., 132 N. Y. 576, 30 N. E. 505.

To which I may add the following cases: Moran v. Carlson, 95 App. Div. 116, 88 N. Y. Supp. 520; McDonough v. Pelham Hod Elevating Co., 111 App. Div. 585, 98 N. Y. Supp. 90; Sullivan v. Tioga Railroad Co., 44 Hun, 304, affirmed 112 N. Y. 643, 20 N. E. 569, 8 Am. St. Rep. 793; Fiesel v. N. Y. Edison Co., 123 App. Div. 676, 108 N. Y. Supp. 130.

Following is a line of cases where the fellow servant rule was not applied:

In Murray v. Dwight, 15 App. Div. 241, 44 N. Y. Supp. 234, the plaintiff was injured by the falling of a pulley block while he was entering a storehouse. He was there for the purpose of assisting in the work. He had not begun. The court says, on page 243 of 15 App. Div., page 235 of 44 N. Y. Supp.:

"The question is whether the defendant is entitled to the benefit of the rule that a master is not liable to an employé for an injury resulting from the negligence of a coemployé. 'In order to establish the liability of one person for an injury caused by the negligence of another, it is not enough to show that the latter was at the time acting under an employment by the former; it must be shown in addition that the employment created the relation of master and servant.' Hexamer v. Webb, 101 N. Y. 377 [4 N. E. 755, 54 Am. Rep. 703]; King v. N. Y. C. & H. R. R. R. Co., 66 N. Y. 184 [27 Am. Rep. 37]; Butler v. Townsend, 126 N. Y. 105 [on page 108, 26 N. E. 1017]. In the latter case, the question involved being similar to the one in the present case, it is said by Judge Finch that the relation exists when the employer selects the workman, may remove or discharge him for misconduct, and may order not only what work shall be done but the mode and manner of performance. In Michael v. Stanton, 3 Hun, 462, where a master sent his servant with a team to work for defendant, and while doing such work the servant through his negligence drove the wagon against the plaintiff's wagon, it was held that no cause of action existed against defendant, since he did not employ the servant and had no power to discharge him from service, and it was said that this was the only test by which to determine which is the master and as such liable to the person injured. The same view was taken in Gerlach v. Edelmeyer, 47 N. Y. Super. Ct. 295, affirmed 88 N. Y. 645. The general rule is that the immediate employer of the agent or servant through whose negligence an injury occurs is the person responsible for the negligence of such agent or servant. Blake v. Ferris, 5 N. Y. 48 [55 Am. Dec. 304]. See, also, Story on Agency, §§ 453, 456. The defendant did not hire or pay the plaintiff. He had no voice in his selection, which is an important element in the matter. The horse belonged to McManus, and the plaintiff's only duty was to drive it. The fact that the plaintiff received

from the defendant's foreman orders when to go forward, or stop, or back up, did not make plaintiff the servant of defendant. Johnson v. N. A. S. N. Co., 132 N. Y. 576 [30 N. E. 505]. The cases on this subject in different jurisdictions are not entirely harmonious. See Bailey on Master's Liability for Injuries to Servant, 226. In Hasty v. Sears, 157 Mass. 123 [31 N. E. 759, 34 Am. St. Rep. 267], it was held that, when one person lends his servant alone to another for a particular employment, the servant for anything done in that particular employment must be dealt with as a servant of the man to whom he is lent, although he remains the general servant of the person who lent him, and if the servant receives injuries in such employment from the negligence of a servant of the person to whom he is lent he cannot recover therefor. Stress was laid on the fact that the danger was so obvious that the plaintiff took the risk. That case followed the case of Rourke v. White Moss Colliery Co., 2 C. P. Div. 205. This is distinguished in the later case of Jones v. Corporation of Liverpool, 14 Q. B. Div. 890. In that case D. contracted with defendants to supply by the day a driver and horse to drive and draw a watering cart belonging to defendants, who directed what streets to water. It was held that the defendants were not liable for the negligence of the driver while in charge of the cart, following Quarman v. Burnett, 6 M. & W. 469, where it was held that the owner of a carriage, who for its use hired horses and a coachman from another, was not liable for the negligence of the coachman. So that apparently the hiring of a horse and driver for a particular service is on a different basis from the lending or hiring of one's servant alone. The principle of the rule under discussion is that the law implies, as part of the contract of service, that the servant agrees to and does assume the risk of injury from the negligence of other servants in the same business. He is presumed to have contracted with reference to such risks. Sherman v. Rochester & Syr. R. R. Co., 17 N. Y. 156; Wood's Railway Law, § 388. In Smith v. N. Y. & H. R. R. Co., 19 N. Y. 127, 132 [75 Am. Dec. 305], Judge Selden says: .'The rule applies only where the action is brought for an injury to a servant or agent against the principal by whom such servant was himself employed.' There was no contract here between the plaintiff and the defendant, and therefore it would seem that there was no basis for applying the principle invoked by the defendant. The plaintiff and the horse were sent at the request of Reed & Co., to enable the latter to perform an independent contract they had with the defendant. Assuming that the plaintiff, while in actual performance of the work which he was sent to do, was, for some purposes, the servant of defendant (McInerney v. D. & H. C. Co., 151 N. Y. 411 [45 N. E. 848]), it does not follow that the defendant is entitled to the benefit of the rule he invokes."

This case was affirmed in the Court of Appeals. 161 N. Y. 301, 304, 55 N. E. 901 (48 L. R. A. 673). Mr. Justice O'Brien, writing for the court, says:

"The question when and under what circumstances the servant of a general master becomes the servant of another is often difficult of solution. There is some apparent conflict in the authorities, due more to the difficulty of applying the legal principle to ever-varying facts than to any discord with respect to the principle itself. Moreover, the rule is subject to some distinctions that are not always easy to state in such a way as to render the result in every case so plain as to command acquiescence, or to give to the decision the character of a conclusive authority. Counsel upon both sides have, in the argument of this case before us, subjected the leading authorities to a very careful and able examination, that has thrown so much light upon the question that we have been greatly aided in arriving at what appears to us to be the proper conclusion. We think the judgment of reversal in the court below is correct. The opinion of Judge Merwin contains such a clear statement of the law as deduced from the numerous cases, and such a judicious application of it to the facts, that we would not attempt to add anything to his reasoning, but for the fact that the learned counsel for the defendant has attempted to prove by an argument, which bears all the marks

of industry and discrimination, that it is in conflict with two or three recent cases in this court. Before referring to these cases, it may not be amiss to point out a feature of the controversy peculiar to this case, and which distinguishes it from many, if not all, of those cited. The relation of master and servant is often confused with some other relation. The mere fact that one person renders some service to another for compensation, expressed or implied, does not necessarily create the legal relation of master and servant. There are many kinds of employment which are peculiar and special, where one person may render service to another without becoming his servant in the legal sense. A servant is one who is employed to render personal services to his employer otherwise than in the pursuit of an independent calling. The truckman who transports the traveler's baggage or the merchant's goods to the railroad station, though hired and paid for the service by the owner of the baggage or the goods, is not the servant of the person who thus employs him. He is exercising an independent and quasi public employment in the nature of a common carrier, and his customers, whether few or many, are not generally responsible for his negligent or wrongful acts, as they may be for those of other persons in their regular employment as servants. A contract, whether express or implied, under which such special jobs are done or such special services rendered, is not that of master and servant within the law of negligence"—citing Jackson A. Iron Works v. Hurlbut, 158 N. Y. 34, 52 N. E. 665, 70 Am. St. Rep. 432; 1 Parsons on Contracts, 101–109.

The Sullivan-Tioga Railroad Co. Case, 112 N. Y. 643, on page 647, 20 N. E. 569, on page 570 (8 Am. St. Rep. 793), was a case in which a servant of a railroad was in an ash pit, and an engineer of the defendant road, with permission to enter the yard and use the turntable and ash pit, entered the yard, and the deceased, being in the pit, was killed. The court states:

"Nor were the persons in charge of defendant's engine, the engineer and fireman, in any sense his coemployés. The evidence fails to show that at the time of the accident he was in a common service or engaged in a common employment with them. He was in the service of the New York, Lake Erie & Western Railroad Company; they were in the service of the Tioga Railroad Company. Their negligence was not one of the risks which, by virtue of his contract of service, he had taken upon himself. He was at no time under the authority of the defendant, nor in any respect its servant. He neither owed service to it, nor did he render it. On the other hand, neither the engineer nor fireman owed any duty to the New York, Lake Erie & Western Railway. It is true that company owned the track, and the defendant used it upon necessary occasions. But the defendant, and so the defendant's servants in charge of its engine, used it as licensees, under such regulations as were imposed as conditions of use, not of service. The intestate was, in respect to his employment, a stranger to the defendant. He was merely at work in a yard to which, by permission of his employer, the defendant by its servants had access. He was removing ashes from the pit; they running an engine over a part of it to reach the turntable; and the duties of each were so limited. Neither was responsible to the master of the other for the manner of performance. There was no common master, and, although, having regard to the place of service, they were neighbors, they were not coservants. Each, therefore, is entitled to protection against the negligence of the other"—citing Smith v. N. Y. & Harlem R. R. Co., 19 N. Y. 127, 75 Am. Dec. 305; Svenson v. A. M. Steamship Co., 57 N. Y. 108.

This case was cited with approval in Sanford v. Standard Oil Co., 118 N. Y. 571, 24 N. E. 313, 16 Am. St. Rep. 787.

In Mills v. Thomas Elevator Co., 54 App. Div. 124, 66 N. Y. Supp. 398, the elevator company entered into a contract with a corporation engaged in laying the concrete in the building to install a hod elevator,

and furnished a man to operate it. It was held that the man so furnished was not a fellow servant of the employé of the concrete company, and where such employé, sent by his foreman to remove a construction in the elevator or shaft, sustained injuries while so engaged in consequence of the negligence of the man furnished by the elevator company to operate the elevator, the latter company was held liable. Affirmed in 172 N. Y. 660, 65 N. E. 1119. Mr. Justice Woodward, writing for the court, cited the Murray and Sanford Cases.

Fiesel v. New York Edison Co., 123 App. Div. 676, 108 N. Y. Supp. 130, was a case where the defendant's servant, in repairing an electric motor, transposed the wires, so that the motor revolved in a reverse direction. It was the servant's duty to test the machinery after repairs, but instead of so doing he called to the plaintiff's intestate, who was employed by the owner of the elevator, and who sometimes operated the car. On moving the starting rope the car went upwards, instead of downwards, and at the top of the shaft tore away the hoisting ropes and fell to the bottom of the shaft. It was held that plaintiff's intestate, though called upon by the defendant's servant, did not for the time become a fellow servant, so as to bar a recovery.

The following is a line of cases where the fellow servant rule was applied:

Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017, was a case where the plaintiff was engaged in the work of repairing the exterior hull of a vessel, which work required two classes of workmen, known as "lumpers" and "caulkers." It was the duty of the former to erect the staging around the vessel upon which they and the caulkers worked. Defendants furnish a sufficient supply of sound and suitable materials. One plank had been examined and condemned, and marked "unsafe." The "lumpers," in erecting the staging, negligently used this plank, which broke while plaintiff was standing upon it, causing his death. It was held that the "lumpers" were not defendant's servants, and that the negligence was that of fellow servants of plaintiff.

Higgins v. Western Union Telegraph Co., 156 N. Y. 75, 50 N. E. 500, 66 Am. St. Rep. 537, was a case where the contract of repairs included the furnishing of elevators, and having so placed them called upon a general servant of the owner of building, whose duty it was to conduct the same for passengers, to operate the elevator, so that a mason in the employ of the contractor could use it as a movable platform in plastering the shaft. While so operating the mason was injured through the conductor's negligence. It was held that the conductor whose negligence caused the injury was not at the time engaged in the defendant's work, but in the work of the contractor under the direction of the plaintiff.

Hasty v. Sears, 157 Mass. 123, 31 N. E. 759, 34 Am. St. Rep. 267, was a case where the plaintiff was a carpenter working at the framework of an elevator, and in doing the work he stood on a ladder in the elevator well. The superintendent, in the presence of the plaintiff, gave orders to the boy not to run the car below the second story until he was notified that the plaintiff had finished his work. The plaintiff began his work of repairs, and while so employed the boy ran the

car down below the second story and injured the plaintiff. It was held that the plaintiff and elevator boy were both servants of the defendant at the time of plaintiff's injury, for which the defendant is not answerable.

Breslin v. Sparks, 97 App. Div. 69, 89 N. Y. Supp. 627, was a case. where the plaintiff, a longshoreman, employed by Emery & Price, engaged in transferring reels of barbed wire from a lighter to a bark, and the hoisting apparatus consisted of a block and tackle, to which the motor power was supplied by a horse. The horse and the driver had been supplied by the defendants, pursuant to an agreement with Emery & Price. Emery & Price's foreman stood upon the deck, and, when plaintiff notified him that the load was ready, blew a whistle for the man in charge of the horse to drive away, thus raising the load. While being hoisted the plaintiff discovered that one of his fingers had been caught in the hooks, part of the hoisting apparatus. He called to the foreman, and the latter signaled the driver of horse to stop, but for some reason he did not, and the plaintiff was injured. It was held that the defendants were not liable, as the driver, while in the general employ of the defendants, was not their servant at the time of the accident, but was a fellow servant of the plaintiff.

Cunningham v. Syracuse Improvement Co., 20 App. Div. 171, 46 N. Y. Supp. 954, was a case where a teamster in the general employment of A. was directed by A. to perform such work as might be required of him by B., by whose foreman he was specifically instructed as to the manner in which he was to load stone upon his wagon from a boat. While so employed he was struck by a stone and injured through the negligence of a servant of B. engaged in the work of loading the stone upon the wagon. It was held that B. was the master of the teamster, and also of the servant through whose negligence he was injured, they being coservants in the common employment, and therefore the action could not be maintained.

Plaintiff was not an emergency employé. To be such—

"he must be so called on as of necessity in order to make him an employé, for a servant has no authority to call on another to help him in his master's business as of necessity unless the necessity exists. If he can do the work himself, there is no occasion or necessity to imply power in him to employ assistance"—citing Marks v. Rochester R. Co., 146 N. Y. 181, 40 N. E. 782; Marks v. Rochester R. Co., 41 App. Div. 66, 58 N. Y. Supp. 210; Wischam v. Richards, 136 Pa. 109, 20 Atl. 532, 10 L. R. A. 97, 20 Am. St. Rep. 900; Olive Whitney Marble Co., 103 N. Y. 292, 8 N. E. 552; Fiesel v. N. Y. Edison Co., 123 App. Div. 676–679, 108 N. Y. Supp. 130.

Defendant's foreman was in charge of the work, and was bound to exercise reasonable care toward plaintiff, who was where he had a right to be.

"That for the acts of the servant, within the general scope of his employment, while engaged in his master's business, and done with a view to the furtherance of that business and the master's interest, the master will be responsible, whether the act be done negligently, wantonly, or even willfully. In general terms, if the servant misconducts himself in the course of his employment, his acts are the acts of the master, who must answer for them." Mott v. Consumers' Ice Co., 73 N. Y. 543, 547.

In Dohn v. Dawson, 90 Hun, 271, 273, 35 N. Y. Supp. 984, 986, the court said:

"It is further urged that the plaintiff took the risk of the situation at the time. We are not aware that, being upon the sidewalk, he took the risk of any falling brickbats that might be carelessly dropped down upon his head by the employés of the defendants. He had the right to be upon the sidewalk. He was there attending to his work, and he had no reason to anticipate such carelessness upon the part of defendants' employés  It is urged that the plaintiff had not shown absence of contributory negligence, and that it cannot be inferred from the proof of the accident and of negligence on the part of the defendants. This is undoubtedly true; but the facts were shown, and the plaintiff has proved that he was where he had a right to be. He had no reason to expect, as already suggested, that brickbats would be showered down upon his head."

The question of contributory negligence was, under all the circumstances, one of fact for the jury. Sullivan v. Tioga R. R. Co., supra; Feeney v. L. I. R. R. Co., 116 N. Y. 375–379, 22 N. E. 402, 5 L. R. A. 544; Krulder, Adm'x, v. Woolverton, 11 Misc. Rep. 537, 32 N. Y. Supp. 742; Lee v. Troy Citizens' Gaslight Co., 98 N. Y. 116; Chisholm v. State, 141 N. Y. 246, 36 N. E. 184.

If there was a question of fact as to whether the plaintiff was or was not guilty of contributory negligence, then it would have been improper to take that from the jury. Geibel v. Elwell, 19 App. Div. 285–289, 46 N. Y. Supp. 76.

Failure to take unusual care, no defense. Ernst v. Hudson R. R. R. Co., 35 N. Y. 9, 90 Am. Dec. 761.

The verdict was not excessive. Germann v. Suburban Rapid-Transit Co. (Com. Pl.) 13 N. Y. Supp. 897.

I think, upon all the evidence, there was a question for the jury of the negligence of defendant and plaintiff's freedom from contributory negligence, and upon disputed proof, the jury having found in his favor, the motion to set aside verdict and for a new trial is denied.