[No. 26796. Department One. January 27, 1938.]

JAY C. FREEMAN, *Respondent*, v. SAM SMIT *et al.*, *Appellants.*[1]

[1]Reported in 75 P. (2d) 575.

HOLCOMB, J., dissents.

*Roberts & Skeel* and *W. R. McKelvy*, for appellants.

*Welts & Welts* and *Richard F. Schacht*, for respondent.

GERAGHTY, J.—The plaintiff recovered judgment against the defendants for injuries sustained by him while assisting in replacing a tire on a vehicle owned by the defendants Smit and driven by their employee, the defendant Zonnevelt.

The Smits, who were engaged in business as contract carriers under permit from the state, employed Zonnevelt to drive one of their trucks operating between Burlington, in Skagit county, and Seattle. The trips to Seattle were generally made at night. On the night of the accident, June 4, 1934, the plaintiff, sixty-four years of age, solicited and obtained from Zonnevelt permission to ride with him from Burlington to Seattle, where the plaintiff desired to go to seek employment. He was permitted to ride in the cab with the driver in violation of the express orders of the owners. The truck and a two-wheel trailer attached were loaded with crated berries for delivery in Seattle.

The truck had reached the neighborhood of Green Lake, on its way into the city, on the Aurora highway, when some tire difficulty was experienced. Investigation by the driver disclosed that the outer dual tire, on the left wheel of the trailer, had blown out and air was escaping from the inner tire. Concluding that it was necessary to replace the blown-out tire, Zonnevelt drove alongside the curb, on the west side of Aurora avenue, to make the change. Aurora avenue is sixty feet in width between curbs and was fully lighted by curb lights on both sides. There were curb signs indicating that one hour parking was permitted. While the driver and plaintiff were engaged in the operation of changing the tire, a car, driven at great speed by an unknown driver, went by, striking the plaintiff and inflicting the serious injuries for which he sues.

The case was tried to a jury, which returned a verdict in favor of the plaintiff against all of the defendants. After denial of motions for judgment notwithstanding the verdict and for a new trial, judgment was entered upon the verdict. The defendants appeal.

While the evidence at the trial below and the briefs on appeal cover a wide range, the controlling issues arise out of the circumstances connected with the respondent's assistance in replacing the tire; that is to say, whether he sustained the relation of employee to appellants while engaged in the operation, and their duty to him, if any, in respect of a safe place in which to work. This is recognized by the respondent, who says in his brief:

"The relationship between the parties at a prior time, is, therefore, of no consequence. Rights and duties are tested by the relationship existing at the time the injury occurred. Freeman's position was that of any stranger or bystander engaged to render assistance."

On these issues, the appellants contend, under their assignments based on the denial of judgment notwithstanding the verdict, first, that the respondent was not an employee and, second, if an employee, they failed in no duty they owed him. It is not claimed by the respondent that he was employed directly by the owners of the vehicle. He relies upon the recognized rule that a servant has implied authority, in an emergency, to employ an assistant and that the person so employed becomes a servant of the master.

Detailing the circumstances under which he was engaged to assist Zonnevelt in replacing the tire, the respondent testified:

"I rode to Seattle with the driver, and we arrived in Seattle a few minutes after twelve. I had never come in to Seattle· before by motor vehicle. . . . This accident happened on Aurora Avenue just north of Green Lake. We were driving down Aurora Avenue when the tire blew out. . . . Q. What did the driver say and do? A. He first said that he would go on in on the other tire, and we drove about two blocks, as near as I can guess, and pulled over to the curbstone and said he would have to see what was done. The trailer didn't seem to be running right, it seemed to be thumping, and he jumped out and ran around and took a look. He said the outer tire had played out and the inner one had gone flat; 'We have got to fix it,' and he jerked the cushion out of the cab and took the tools out and he savs, 'Come on, you have got to help me. We have got to get out of here, I am late.' Q. Did you then obey his request? A. I done just what he told me. Q. You say he told you you had to help him? A. Yes, Sir, he asked me to help him. . . . Q. Then when the driver told you you had to help him, where did you go, or what did you do? A. I went with him. Q. Where did he take you? A. He jacked up the wheel, then he loosened the nuts on the tire that had blown out. He says, 'You back this off, take these nuts off, I will loosen the spare behind.' I done just what he told me. I backed the nuts off, took

the wheel off and threw it down around the corner of the trailer. And he says, 'I have got the spare off, help me carry it around.' We did, and hung it on the bolts. He said, 'You start the nuts, I will put the spare on behind and we will get to going.' I took the tire off that was blown out. The tire was worn smooth. . . . I would not have helped him with this work if the driver had not ordered me to do it. I did the work only because I was ordered to do it. . . . When I was loosening the nuts on the tire that was blown, I was standing next to the trailer, toward the center of the street. When I got the wheel loose, I took the wheel off and threw it around the corner, and the driver asked me to help him to carry the spare around. I carried one side and he carried the other. I would judge that the rim and the tire weighed somewhere between 40 and 60 pounds."

The rule is stated in 18 R. C. L. 580 as follows:

"If an unforeseen contingency or emergency arises, rendering it necessary in the employer's interest that his employee have temporary assistance, the law implies authority to procure such necessary help; and a substitute or assistant procured under these circumstances is entitled to the same measure of protection as any other employee in the service. It is the emergency that gives rise to the implied authority, and if it does not in fact exist then neither does the implication of authority arise. Whether the circumstances of any particular case constitute what may be deemed an emergency is generally a question for the jury's determination."

If the servant can do the work himself, there is no emergency authorizing the employment of assistance. The rule, with its limitation, is stated by Judge Gaynor, in *Fiesel v. New York Edison Co.,* 123 App. Div. 676, 108 N. Y. Supp. 130, as follows:

"An emergency employe, called on by another employe to assist him, for however short a time, becomes a fellow servant, and subject to the rules of law applicable to the injury of a servant by his fellow. But

he must be so called on as of necessity in order to make him an employe, for a servant has no authority to call on another to help him in his master's business as of necessity unless the necessity exists. If he can do the work himself, there is no occasion of necessity to imply power in him to employ assistance."

Whether an emergency exists authorizing a servant to employ assistance is said to be ordinarily a question of fact for the jury.

■ ■ Assuming, without deciding, that there was evidence enough to warrant submitting to the jury the issue of the existence of an emergency authorizing Zonnevelt to engage the services of respondent in changing the tire, we are, nevertheless, of the opinion that, as a matter of law, the appellants did not breach any duty they owed the respondent in respect of a safe place to work. As we have seen, the truck was parked alongside the curb on a well-lighted street sixty feet in width. We quote from the respondent's testimony:

"Q. At the time of the accident you remember that the street was well lit up, don't you? A. Overhead with these big lights. Q. And on both sides of the street there were buildings—light shining out of those buildings all along, weren't there? . . . I mean on the night of the accident the whole street was lit up there? A. It was lit up, yes. Q. That came from a row of lights on one side of the street and another on the other side of the street and business houses lit up? A. There were lights all along, yes. Q. At no place on that street was it dark between curbings, was it? A. It wasn't pitch dark, no. Q. Well, it wasn't dark at all, was it Mr. Freeman, out there on that street? A. Well, alongside of that truck you couldn't see as good as you could away from it, if that is what you want me to tell you."

Police Officer E. L. Raethke, a witness for the respondent, who appeared on the scene shortly after the

accident, questioned as to the condition of the lights on Aurora avenue at the place of the accident, said the avenue was "exceptionally well lit, compared with other streets." He testified that a' vehicle without a tail light could be seen for at least a block away, being about three. hundred feet. He testified that there was no red light on the rear of the trailer when he reached the scene of the accident. The respondent himself had stated he could not say whether a tail light was burning or not.

It is the respondent's position that the appellants breached their duty to him, as an employee, in assigning him to assist in changing tires on the street; that the truck should have been driven into a garage. One garage was passed and another was a short distance ahead. The suggestion is also made that the truck could have been driven into a side street. The rule stated in *Jones v. Baker*, 179 Wash. 25, 35 P. (2d) 1103, is applicable here:

"It is a settled rule that it is the duty of the master to furnish his servant a reasonably safe place to work. But there is a corollary to this rule, which qualifies it and which is equally well settled; and that is, where the danger or defect is as much open to the knowledge of the servant as the master, then the servant cannot recover for an injury, because he, having knowledge of and appreciating the danger or defect, is either guilty of contributory negligence or has assumed the risk. Where the danger is alike open to the observation of all, the master and servant are upon an equal footing, and the master is not liable for an injury resulting from the dangers of the business. In *Brandon v. Globe Inv. Co.*, 108 Wash. 360, 184 Pac. 325, 10 A. L. R. 286, it is said:

" 'It is too well settled to need citation of authority that it is the duty of the master to furnish his servant a reasonably safe place in which to work; but another rule, which qualifies and runs with the one announced and which is equally well settled, is that, where the

danger or defect is as much open to the view and knowledge of the servant as of the master, then the servant cannot recover for an injury, because he, having knowledge of and appreciating the danger or defect, either is guilty of contributory negligence or has assumed the risk. It is upon this principle that this case must be decided'."

In *Deitchler v. Ball,* 99 Wash. 483, 170 Pac. 123, the respondent was driving his car toward the city of Seattle on a pavement sixteen feet wide. When close to Seattle, rain began to fall. He was on the right-hand side of the road, with two wheels on the pavement and two off. While engaged in adjusting the front part of the top, he was struck by the appellant's car. The appellant argued that the respondent was guilty of contributory negligence in undertaking to adjust his car in that situation and not pay attention to what was going on about him. Passing on this point, the court said:

"Naturally this would be true, because, when he was engaged in fastening the top as it should be fastened, in standing close to his car, as he says he was, he had a right to assume that no person would run into him. It was not necessary for him to pay particular attention to passersby who had plenty of room to avoid him. The respondent, no doubt, as contended by the appellant, was required to use ordinary reasonable care for his safety, and if his testimony is to be believed at all, he did so when he was standing close to his car attending to his business, and was not putting himself in the way of danger. The respondent clearly had the right to stop his car at the place he did, and he clearly had a right to occupy a portion of the paved way in attending to whatever was necessary to be done about his car; and it was the duty of persons coming up to him to so control their cars as not to injure him, especially where there was room to avoid injury, as there evidently was in this case."

This case is cited with approval in *Holman v. Uglow*, 137 Ore. 358, 3 P. (2d) 120, where the court says:

"An automobilist who exercises due care may in an emergency use a portion of the roadway for making necessary inspections of his car, raising the top, making needed repairs, or for the performance of other acts rendered necessary by the inability of his car to proceed. Such actions, being incidental to travel, are regarded as a proper use of the highway: *Martin v. Oregon Stages*, 129 Or. 435 (277 P. 291); *Dare v. Boss*, 111 Or. 190 (224 P. 646); *Deitchler v. Ball*, 99 Wash. 483 (170 P. 123); *Schacht v. Quick*, 178 Wis. 330 (190 N. W. 87, 25 A. L. R. 130); 42 C. J. title Motor Vehicles, p. 1041, § 791."

With the lighted condition of the street and the possibility of seeing a parked vehicle three hundred feet ahead, as testified by the police officer, whether or not the trailer bore a small red light would seem to be of little moment from the standpoint of safety.

The judgment is reversed, and the cause remanded with direction to dismiss.

STEINERT, C. J., MAIN, and SIMPSON, JJ., concur.

HOLCOMB, J. (dissenting)—The matter of whether a safe place to work, under all conditions and circumstances existing at the time and place in question, is certainly a matter upon which the minds of reasonable men might differ. It was therefore a question of fact for the jury to decide.

For this reason, I dissent.