Al BERRY, Appellant (Plaintiff below),

v.

IOWA MID-WEST LAND AND LIVE-
STOCK COMPANY, a Corporation,
Appellee (Defendant below).

No. 3566.

Supreme Court of Wyoming.

March 6, 1967.

R. R. Bowman, of Bowman & Garrett, Lovell, for appellant.

Paul B. Godfrey, of Henderson & Godfrey, Cheyenne, for appellee.

Before GRAY, McINTYRE and PARKER, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Al Berry, claiming to be an employee of Iowa Mid-West Land and Livestock Company, brought suit against his alleged employer for negligence in failing to provide safe equipment. While attempting to make an electrical connection on a 220-volt power line of the Rural Electrification Administration, Berry claims his ladder slipped causing him to grab one of the electric

410

wires. He received burns and electric shock and was rendered unconscious.

The case was tried to a jury. It found for plaintiff and awarded damages in the amount of $7,000. The trial judge, however, found the evidence insufficient to support the verdict and entered judgment for defendant, notwithstanding the verdict. From this judgment the plaintiff has appealed. He makes it clear the single issue is whether there was substantial evidence upon which the jury's verdict for plaintiff could stand.

■ We must, of course, give to the evidence every reasonable inference which may be drawn in favor of the plaintiff, and we must resolve conflicts in the evidence in plaintiff's favor. But even when we do so, we fail to find any evidence in the record of negligence on the part of defendant which plaintiff did not contribute to or assume the risk of.

The defendant's farm near Otto, Wyoming, had been sold, but defendant reserved the right to keep a band of sheep thereon for a period of time. Plaintiff-Berry had been working as a ranch employee for defendant-livestock company and was still living on the farm when injured. Defendant admits Berry was paid on April 13, 1965, up to and including April 15, 1965. The accident happened on the morning of April 15, 1965.

■ Although defendant contended Berry's services had been terminated and that he was not working for defendant at the time of the accident, the jury found otherwise. We find the evidence on the question of whether plaintiff was an employee of defendant at the time of his accident in conflict, and we are bound by the verdict of the jury as far as that issue is concerned.

Also, the evidence was in dispute as to whether defendant's manager and officer in charge, Jack Goggins, who lived in Montana, had instructed Berry to make the electrical connection he was attempting to make when injured. The new occupant of the farm, LeRoy Vossler, had temporarily moved into the bunkhouse. This house was not wired for his electric stove, and he was desirous of having 220-volt electricity brought in so the electric stove could be used. About two weeks before Berry attempted to do the wiring, there was a conversation about a hookup for this stove.

■ Goggins claims he merely said in casual conversation that Berry, who had previous experience with the kind of electrical work involved, could wire the house. The plaintiff and other witnesses testified Goggins instructed Berry to wire up the stove when he had time. In any event, the total evidence was such that the jury was entitled to believe Goggins had instructed Berry to wire the stove and that Berry was engaged in the performance of work for defendant when injured.

However, even if we accept the proposition that plaintiff was an employee of defendant engaged in the performance of duties for his employer, when injured, we still find no evidence of negligence on the part of defendant which would not be equally chargeable to plaintiff himself.

The theory advanced by plaintiff in his attempt to charge defendant with negligence is that Goggins instructed Berry to wire up the stove; that Goggins made no effort to determine whether plaintiff had proper tools and equipment for the job; and that climbing irons, a safety belt, and insulated gloves would have been proper equipment and would have prevented the accident.

The plaintiff admits he had previous experience in wiring and knew such extra equipment might be necessary. He testified, however, that his employer was not available at the time for him to request additional equipment. Therefore, he proceeded with the work because he "believed that the wiring could be accomplished with the tools at hand."

If plaintiff, knowing the dangers involved, nevertheless elected to proceed with what he called the tools at hand because he believed the wiring could be accomplished with such tools, it is difficult to understand

why he should be permitted afterward to charge defendant with his own miscalculation. Moreover, with proper care and foresight a ladder can be made sufficiently secure and safe to avoid slipping and the kind of accident plaintiff suffered.

For example, small holes in the ground for legs of the ladder to fit into can prevent slipping at the bottom. At the top, a temporary nail fastening the top crossbar to the power pole, or a tying of the top of the ladder to the pole, could help to prevent the ladder from slipping at the top. And, of course, it always helps for a competent person to hold a ladder. In this instance such a person was present and available—Vossler, the man for whom the wiring was being done.

 We do not pretend to say whether Goggins was negligent in failing to furnish safer equipment or whether Berry was negligent in failing to properly secure his ladder. The question of defendant's negligence and the question of plaintiff's contributory negligence are both questions of fact for the jury. Under the circumstances of this particular case, however, we can say it is apparent that if defendant's omission is assumed to constitute negligence, then the acts of plaintiff would necessarily and as a matter of law amount to contributory negligence.

 Where a danger is as open and obvious to the servant as to the master, or where the servant has better means of knowledge than the master, he will be charged with such negligence as to bar recovery. 56 C.J.S. Master and Servant § 435, p. 1259; Ring v. Kruse, 158 Neb. 1, 62 N.W.2d 279, 285; Freeman v. Smit, 193 Wash. 346, 75 P.2d 575, 577–578. See also Nolen v. Halpin-Dwyer Const. Co., 225 Mo. App. 224, 29 S.W.2d 215, 219, where the court gives as a reason for this rule that if either is guilty of any failure the other is guilty of the same.

 In Restatement Second, Agency 2d § 521, p. 489 (1958), it is given as a rule that a master is not liable to a servant for harm caused by unsafe conditions of employment, if the servant, with knowledge of the facts and understanding of the risks, voluntarily enters or continues in the employment. Also, in Chicago & N. W. Ry. Co. v. Ott, 33 Wyo. 200, 237 P. 238, 241, rehearing denied 238 P. 287, certiorari denied 269 U.S. 585, 46 S.Ct. 201; 70 L.Ed. 425, this court adopted the following rule with respect to risks assumed by an employee:

"A servant assumes (1) the risk of such dangers as are ordinarily and normally incident to his occupation, and a workman of mature years is presumed to know them, whether he does or not; (2) such extraordinary or abnormal risks—usually, at least, arising out of the negligence of the master—the conditions and dangers of which he (a) knows and appreciates and faces without complaint, or the conditions and dangers of which (b) are so obvious and apparent that an ordinarily careful person would, under the circumstances, observe and appreciate them. * * *"

In the case before us, it is clear from the evidence and in fact admitted by plaintiff that all dangers present were open and obvious to plaintiff; and that they were as well or better known to him than they were to defendant's manager and officer in charge. Berry himself testified he had previous experience with electrical wiring, having worked in the oil fields for several months where he did a considerable amount of wiring for high-voltage electricity. Also, plaintiff had previously wired one of the buildings on defendant's farm for 220-volt electricity.

According to plaintiff's further testimony, he had seen a man killed by electricity and knew the dangers involved. With respect to the wires being worked on when plaintiff was injured, they were insulated, but they had bare spots caused by clamps having been placed on the wires at a previous time. The plaintiff could see from the ground that insulation was gone from

the wires. The defendant's manager, Goggins, was not present when plaintiff undertook to do the wiring.

Appellant's attorney relies strongly on the case of Siragusa v. Swedish Hospital, 60 Wash.2d 310, 373 P.2d 767, for the proposition that the doctrine of assumption of risk should not apply in an employer and employee case of the kind here involved. There are, of course, so many cases which discuss the principles of assumption of risk and contributory negligence in employment cases that it would be futile for us to attempt to reconcile and distinguish them.

For purposes of our decision in the case before us, we think the principles and rules we have set forth are sufficient to show, under the circumstances here present, that if negligence is charged to the employer, then equal and contributory negligence would as a matter of law have to be charged to the employee—the result being that the employee would be barred from a recovery. The judgment for defendant, notwithstanding the verdict of the jury, must therefore be affirmed.

Affirmed.

HARNSBERGER, C. J., not participating.